24 A.3d 300 (2011)
421 N.J. Super. 374
Gary SMITH and Eileen Smith, Plaintiffs-Appellants/Cross-Respondents,
v.
JERSEY CENTRAL POWER & LIGHT COMPANY, Defendant-Respondent/Cross-Appellant, and
First Energy Corp., Defendant.
No. A-2801-08T2.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 2010.
Decided August 10, 2011.
*303 William J. Wolf argued the cause for appellants/cross-respondents (Bathgate, Wegener & Wolf, attorneys; Mr. Wolf and Pamela Madas Snyder, Lakewood, on the briefs).
Arnold R. Gerst argued the cause for respondent/cross-appellant (Weiner Lesniak, attorneys; Mr. Gerst, of counsel and on the brief; Richard L. Rudin, Margaret A. Miller and Jeanne A. McManus, Parsippany, on the brief).
Before Judges PARRILLO, YANNOTTI and SKILLMAN.
The opinion of the court was delivered by SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
This is an unusual case involving a nuisance claim based on "neutral-to-earth voltage" (NEV), also called "stray voltage" or "stray current," passing along the ground of a residential property. Plaintiffs, Gary and Eileen Smith, husband and wife, sued defendant, Jersey Central Power & Light Company, because high NEV levels from its electrical distribution system gave them shocks in their backyard. The jury found defendant liable for nuisance and awarded plaintiffs $145,000 for property damage and $50,000 for interference with the use of their property. Plaintiffs appeal, challenging the trial court's dismissal of their inverse condemnation claim and the denial of their claim for certain taxed costs. Defendant cross-appeals, asserting various trial errors. We reject the arguments presented in both the appeal and cross-appeal, and affirm.

I.
Plaintiffs and their three young boys lived in a single family house in Brick. The backyard contained a cement patio, a swing set, a sandbox, an above-ground pool with metal ladders, and a hot tub.
*304 After returning home from a family vacation in July 2002, Gary walked barefooted to the hot tub, put his arm into the water to feel the temperature, and felt an electric shock, like "a tingling, hurting sensation," travel up his arm to his chest. The next day, he put his arm in the hot tub again and received an electric shock so strong it felt as though someone had punched him in the chest. He asked Eileen to feel the water. She felt nothing while wearing her shoes, but when she took them off and touched the water, she felt a "tingling sensation, a buzzing sensation," as if she had inserted a fork into a toaster.
An electrician plaintiffs called to investigate the problem found very high levels of electricity in the ground surrounding the hot tub and swing set. The electrician also determined that the source of the problem was not within plaintiffs' house and suggested they call defendant.
Defendant sent investigators to plaintiffs' house, who concluded after extensive testing that the source of the electric shock problem in their backyard was defendant's electrical distribution system, specifically NEV. It is not necessary to describe NEV in detail to understand the issues presented by this appeal. Suffice it to say that although electricity is distributed to users through electrical wires, all electricity leaving an electrical substation must return to the substation to complete the circuit, and although returning electricity passes mostly through wires, it sometimes goes through the ground when the wires become overloaded. Because electricity seeks the path of least resistance, when the return is through the ground, the electricity will tend to ground to such things as pools, hot tubs, outdoor irrigation systems, faucets, and swing sets.[1]
Although NEV does not ordinarily pose a problem to homeowners, the high level of NEV in the backyards of plaintiffs and some of their neighbors created a significant problem, which was corroborated by defendant's testing. One of defendant's investigators advised plaintiffs to always wear shoes when going outside and not to touch anything metal or wear wet clothing outside their house.
Following the receipt of this advice and fearing for their family's safety, plaintiffs filled in the sandbox, dismantled the swing set and pool in their backyard, and started wearing shoes both inside and outside. They also planned family activities away from the house, and stopped using their backyard. They spent $29,400 to install a second-story fiberglass deck onto their house, so their sons would have a place to play outside without touching the ground.
The Board of Public Utilities retained a consultant to investigate the NEV problem in plaintiffs' neighborhood, who concluded that "the stray current problems in the neighborhood" were "very complex and [could] be solved [only] by applying a system wide solution." The BPU subsequently ordered defendant to implement the consultant's recommendations "to mitigate the potential for future occurrences of stray voltage."
Defendant undertook extensive efforts over a period of several years to correct the problem. The extent to which those efforts succeeded was a contested issue at the trial of this case.
Plaintiffs brought this action against defendant and its parent corporation, First *305 Energy Corp., which was dismissed from the case before trial. Plaintiffs' complaint asserted various theories of liability, including negligence, nuisance, trespass, inverse condemnation, and negligent infliction of emotional distress.
The case was tried over the course of twelve days. Plaintiffs presented testimony by a real estate valuation expert, who expressed the opinion that the presence of NEV on plaintiffs' property had reduced its market value to zero and that even if the NEV was fully remediated, the "stigma" from that problem would reduce the property's value from $460,000 to $345,000. Plaintiffs also presented testimony by their treating psychiatrist and an expert psychologist, who expressed the opinion that plaintiffs' fear of the NEV had caused them to suffer from anxiety, which was being treated by medication.
At the close of plaintiffs' case, the trial court granted defendant's motion to dismiss plaintiffs' inverse condemnation claim. At the conclusion of the case, the jury determined that plaintiffs had no cause of action against defendant for negligence, trespass, or negligent infliction of emotional distress. However, the jury returned a verdict in plaintiffs' favor for nuisance, awarding them $145,000 for property damage and $50,000 for interference with the use of their property. The jury also determined that there was no basis for an award of damages for pain and suffering or emotional distress.
Based on the jury verdict, the trial court entered judgment in plaintiffs' favor for $195,000, plus prejudgment interest of $34,512.21. In addition, the court determined that plaintiffs were entitled to taxed costs.
Plaintiffs applied for taxed costs in the amount of $49,717.11. The trial court denied most of the taxed costs sought by plaintiffs and awarded them only $883.44.
Following the entry of judgment, defendant moved to set aside the jury verdict based on plaintiffs' installation of a swimming pool in their backyard a few months after the verdict. The trial court denied this motion.
Plaintiffs appeal from the dismissal of their inverse condemnation claim and denial of the full amount of their application for $49,717.11 in taxed costs. Defendant cross-appeals from the trial court's denial of its motion to set aside the nuisance verdict in plaintiffs' favor and from the award of prejudgment interest on the $145,000 verdict for property damage. We reject all of the arguments presented on both the appeal and cross-appeal and affirm.

II.
Defendant moved to dismiss plaintiffs' appeal from the dismissal of their inverse condemnation claim on the ground that it was not filed within the forty-five day period allowed by Rule 2:4-1. We initially reserved decision on this motion, which we now deny.
The essential premise of defendant's motion was that final judgment was entered on May 9, 2008. Since plaintiffs did not file their notice of appeal until February 6, 2009, the appeal would have been untimely if this premise was correct. However, we conclude that final judgment was not entered until January 16, 2009, when the court entered an order memorializing its rulings regarding plaintiffs' entitlement to taxed costs.
The May 9, 2008 "judgment for plaintiffs" appears on its face to be a final judgment. Moreover, the provision in the order awarding plaintiffs taxed costs, without specifying the amount, would not ordinarily prevent it from being treated as final because a determination of the *306 amount of taxed costs is usually a routine ministerial function performed by the clerk of the court.
However, the amount of taxed costs in this case was a disputed issue that had to be determined by the trial court. Plaintiffs applied to the clerk for an award of nearly $50,000. Defendant opposed this application, and the dispute was brought before the court to rule upon. Both parties submitted briefs, oral argument was conducted, and the court rendered an oral opinion adjudicating the dispute and entered the January 16, 2009 order memorializing its rulings.
For a judgment to be final and therefore appealable as of right, it "must dispose of all claims against all parties." S.N. Golden Estates, Inc. v. Cont'l Cas. Co., 317 N.J.Super. 82, 87, 721 A.2d 307 (App.Div.1998). This rule is "no less applicable to an appeal ... of an issue, such as counsel fees and costs, that ought to have been resolved before final appellate consideration." Shimm v. Toys From the Attic, Inc., 375 N.J.Super. 300, 304, 867 A.2d 1204 (App.Div.2005). Therefore, if plaintiffs had attempted to appeal or cross-appeal the dismissal of their inverse condemnation claim before their claim for costs had been adjudicated by the trial court, it would have been subject to dismissal as interlocutory.
Accordingly, we deny defendant's motion to dismiss the part of plaintiffs' appeal that challenges the dismissal of their inverse condemnation claim.

III.
In addressing plaintiffs' argument that the trial court erred in dismissing their inverse condemnation claim, we first note that plaintiffs do not seek a reversal and remand for a new trial on this claim. Rather, plaintiffs seek a declaration "as a matter of law" based on the record developed at trial "that inverse condemnation has occurred." Moreover, plaintiffs do not seek any damages on their inverse condemnation claim in addition to the $195,000 the jury awarded on their nuisance claim. The only relief plaintiffs seek is a remand "for the limited purpose of awarding legal fees, costs, disbursements and expenses, including reasonable appraisal and engineering fees to the plaintiffs, as required by N.J.S.A. 20:3-26(c)."[2] Therefore, the issue before us is not whether the trial court erred in dismissing plaintiffs' inverse condemnation claim, but only whether plaintiffs are entitled, without a new trial on that claim, to an award of legal fees and litigation costs under N.J.S.A. 20:3-26(c).
The Supreme Court of the United States has distinguished between taking cases involving "[1] a permanent physical occupation, [2] a physical invasion short of an occupation, and [3] a regulation that merely restricts the use of property." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 430, 102 S.Ct. 3164, 3173, 73 L.Ed.2d 868, 879 (1982); see also Tuthill Ranch, Inc. v. United States, 381 F.3d 1132, 1136-38 (Fed.Cir.2004); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1353 (Fed.Cir.2002), cert. denied, 540 U.S. 1075, 124 S.Ct. 940, 157 L.Ed.2d 746 (2003); Simmons v. Loose, 418 N.J.Super. 206, 233-35 (App.Div.2011). It is only in the first category of case, "when the physical intrusion reaches the extreme form of a permanent physical occupation," that a taking will be found, regardless of the degree of interference with the property *307 owner's use of his land. Loretto, supra, 458 U.S. at 426, 102 S.Ct. at 3171, 73 L.Ed.2d at 876. "[A] permanent physical occupation is a governmental action of such a unique character that it is a taking without regard to other factors that a court might ordinarily examine." Id. at 432, 102 S.Ct. at 3174, 73 L.Ed.2d at 880. However, if a physical invasion of property falls short of a permanent occupation, a "balancing process" that includes consideration of the degree of interference with the property owner's use of his land is required to determine whether a taking has occurred. Ibid.[3]
This case clearly does not involve a permanent physical occupation of plaintiffs' property; defendant did not, for example, erect utility poles on part of plaintiffs' property. Plaintiffs have continued to occupy and use all of their property even though the NEV from defendant's electrical distribution system interfered with that use. Moreover, that interference was temporary or intermittent, rather than permanent; or at least a trier of fact could reasonably have reached this conclusion based on defendant's proofs.
Although a taking may be found in such a case, this determination depends upon all the circumstances of defendant's infringement upon plaintiffs' use of their property, including the extent and duration of that infringement. See Kaiser Aetna v. United States, 444 U.S. 164, 177-80, 100 S.Ct. 383, 391-93, 62 L.Ed.2d 332, 344-46 (1979); Ark. Game & Fish Comm'n v. United States, 637 F.3d 1366, 1377-79 (Fed.Cir. 2011); Tuthill Ranch, supra, 381 F.3d at 1137-38; Simmons, supra, 418 N.J.Super. at 234-35, 13 A.3d 366; Rohaly v. State, Dep't of Envtl. Prot., 323 N.J.Super. 111, 116-18, 732 A.2d 524 (App.Div.1999). Such a determination requires development of a full record and fact finding.
However, as previously discussed, plaintiffs do not seek a remand for a new trial for this purpose. Instead, they argue that the jury's verdict in their favor on their nuisance claim "establishes that the plaintiffs proved a claim for inverse condemnation," and therefore, this court "should reverse the order of the trial court that dismissed the plaintiffs' inverse condemnation claim, and declare that the plaintiffs established, through the jury's verdict, a claim for inverse condemnation."
We reject this argument because the elements of a claim for inverse condemnation where there has been no permanent physical occupation of the landowner's property are significantly different from the elements of a claim for nuisance. To prevail on a nuisance claim, a plaintiff is not required to show that an interference with the use of his property was permanent. See Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 100-03, 675 A.2d 1077 (1996). Although the jury awarded plaintiffs substantial damages for nuisance, we cannot determine from the verdict whether the jury found that the effects of the NEV upon plaintiffs' use of their property was permanent or that the interference was only temporary but was extremely serious for some period of time. Thus, the jury's verdict on the nuisance claim does not necessarily reflect *308 the findings that would be required to establish an inverse condemnation claim.
Our conclusion that the jury's findings on plaintiffs' nuisance claim do not provide the factual foundation required for a judgment in their favor on the inverse condemnation claim is also supported by the fact that there is a substantial body of case law dealing with property owners' claims against electric utilities for NEV, mostly claims by dairy farmers predicated on alleged decreases in the milk producing capacity of their cows, based on negligence, nuisance, and other common law torts. See generally 8A Nichols on Eminent Domain § G26.01 and n. 7 (3d ed. 2011) (listing cases and articles about dairy farmers suing electric companies); Marjorie A. Shields, Recovery from Electrical Utility for Personal Injury or Property Damage Resulting from Stray Voltage, 91 A.L.R. 5th 517, 524 (2001) (noting that "liability [for NEV] arises most often in the context of farm operations, where livestock come into contact with stray voltage"). However, none of those cases have recognized that NEV can provide a basis for an inverse condemnation claim. Therefore, even assuming, as we do, that a sufficiently serious case of NEV that an electric company was unable to correct could provide a basis for an inverse condemnation claim, the jury's finding that defendant unreasonably interfered with plaintiffs' use and enjoyment of their land, although sufficient to support a verdict on their nuisance claim, was insufficient to establish a taking.
There is an additional reason we cannot accept plaintiffs' argument that the jury's verdict on their nuisance claim established the factual foundation for their inverse condemnation claim. In Van Dissel v. Jersey Central Power & Light Co., 181 N.J.Super. 516, 523-27, 438 A.2d 563 (App. Div.1981), certif. denied, 89 N.J. 409, 446 A.2d 142 (1982), vacated on other grounds, 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984), we held that there is no right to a jury trial with respect to an inverse condemnation claim. Therefore, defendant had a right to have this claim determined by the trial court. Defendant could of course have waived this right, but our review of the record does not disclose such a waiver.
Therefore, even assuming the trial court erred in dismissing plaintiffs' inverse condemnation claim, plaintiffs are not entitled to the relief they seek on appeal based on that dismissal.

IV.
The trial court issued an oral opinion in ruling upon plaintiffs' contested application for taxed costs. The court ruled that the award of $883.44 of the taxed costs sought by plaintiffs was mandatory and that it had the discretionary authority to award certain other costs. See N.J.S.A. 2A:15-59. However, the court concluded that the award of those other costs was not appropriate under the circumstances of this case.
Our review of that ruling is limited to determining whether it constituted an abuse of discretion. Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 396, 189 A.2d 7 (1963); Buccinna v. Micheletti, 311 N.J.Super. 557, 561, 710 A.2d 1019 (App.Div.1998). We have previously indicated that deposition costs, which were one of the items for which plaintiffs sought an award, "are not generally recoverable as taxed costs." Buccinna, supra, 311 N.J.Super. at 564, 710 A.2d 1019. We have also held that "[t]he statute which allows for the taxation of costs does not contemplate the paying of fees or expenses for expert witness preparation, reports and testing in a civil case." Id. at 566, 710 A.2d 1019. Moreover, although the court *309 has authority to make an award for reproduction costs, this is purely discretionary. Ibid. In light of these limitations upon awards of taxed costs, we perceive no basis in this record for concluding that the trial court abused its discretion in refusing to award most of the taxed costs sought by plaintiffs.

V.
In its cross-appeal, defendant argues that the trial court erred in denying its motion to set aside the verdict in plaintiffs' favor on the ground that the jury finding that defendant was not negligent precluded a finding that it created a nuisance on plaintiffs' property.
"The essence of a private nuisance is an unreasonable interference with the use and enjoyment of land." Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448, 149 A.2d 599 (1959). In determining whether a plaintiff has established an unreasonable interference with the use and enjoyment of land, our courts are guided by the principles set forth in the Restatement (Second) of Torts. See State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 491-92, 468 A.2d 150 (1983).
Section 822 of the Restatement states:
One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
(a) intentional and unreasonable, or
(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.
[Restatement (Second) of Torts § 822 (1979).]
An invasion of a plaintiffs' interest in land is considered "intentional" not only if the defendant "acts for the purpose of causing" an invasion of plaintiffs' interest in the use of his land, id. § 825(a), but also if he "knows that [the invasion] is resulting or is substantially certain to result from his conduct," id. § 825(b). Even if the defendant's first invasion of plaintiff's land is unintentional, "when the [defendant's] conduct is continued after [he] knows that the invasion is resulting from it, further invasions are intentional." Id. § 825 cmt. d; see also id. § 825 cmt. d, illus. 4; Vogel v. Grant-Lafayette Elec. Coop., 201 Wis.2d 416, 548 N.W.2d 829, 836-37 (1996) (recognizing potential applicability of this principle to a landowner's nuisance claim against an electric utility for causing NEV on his property).
"An intentional invasion of [plaintiff's] interest in the use and enjoyment of land is unreasonable if ... the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible." Restatement (Second) of Torts § 826(b) (1979). This section of the Restatement recognizes that "[i]t may sometimes be reasonable to operate an important activity if payment is made for the harm it is causing, but unreasonable to continue it without paying.... The action for damages does not seek to stop the activity; it seeks instead to place on the activity the cost of compensating for the harm it causes." Id. § 826 cmt. f.
To establish a negligence claim, a plaintiff must show that the defendant's "conduct ... falls below the standard established by law for the protection of others against unreasonable risk of harm," id. § 282, which is generally what "a reasonable man [would do] under like *310 circumstances," id. § 283. The Restatement also states with respect to a negligence claim:
Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.
[Restatement (Second) of Torts § 291 (1965).]
It is evident from these sections of the Restatement that the kind of conduct that will support a negligence claim is different from the "unreasonable" interference with the use and enjoyment of land that will support a nuisance claim. A negligence claim is directed solely at the conduct of the defendant; if that conduct is not unreasonable under all the circumstances, it will be found not to have been negligent. Ibid. On the other hand, a defendant's conduct may be found to have constituted a nuisance even though the conduct has sufficient social utility to be considered reasonable so long as damages are paid to the party whose use and enjoyment of land has been interfered with by this conduct. Id. 826(b).
Consistent with these distinctions between nuisance and negligence set forth in the Restatement, our former Court of Errors and Appeals stated that "liability for negligence is based on a want of proper care, while, ordinarily, a person who creates or maintains a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid such injury." Monaco v. Comfort Bus Line, 134 N.J.L. 553, 559, 49 A.2d 146 (E.A.1946) (quoting 39 Am.Jur. 282).
More recently, our Supreme Court has described the elements of a cause of action for nuisance, without indicating that they include a showing that the defendant was negligent:
The elements [of nuisance] are myriad. The law has never undertaken to define all of the possible sources of annoyance and discomfort which would justify such a finding. Litigation of this type usually deals with the conflicting interests of property owners and the question of the reasonableness of the defendant's mode of use of his land. The process of adjudication requires recognition of the reciprocal right of each owner to reasonable use, and a balancing of the conflicting interests. The utility of the defendant's conduct must be weighed against the quantum of harm to the plaintiff. The question is not simply whether a person is annoyed or disturbed, but whether the annoyance or disturbance arises from an unreasonable use of the neighbor's land or operation of his business.
[Sans, supra, 29 N.J. at 448-49, 149 A.2d 599.][4]
This distinction between causes of action for negligence and nuisance has been recognized in other jurisdictions. In King v. Columbian Carbon Co., 152 F.2d 636 (5th Cir.1945), the owner of a farm brought a nuisance action against the owner of an adjoining industrial facility that emitted soot and other noxious substances which interfered with the operation of his farm. The farm owner conceded that the industrial facility had not been negligently constructed and was not being negligently *311 operated. Nevertheless, the court concluded that a nuisance action was maintainable:
Liability for negligence is based on want of proper care while one who creates or maintains certain types of nuisances may be liable for resulting injury regardless of the degree of care or skill exercised to avoid injury.... In the case of nuisances not created by negligence, ordinarily the question of care or want of care is not involved.
....
... [T]he law does not allow one to be driven from his home or compelled to live in substantial danger or discomfort even though the danger or discomfort is caused by a lawful and useful business. [Id. at 638-39.]
Similarly, in American Cyanamid Co. v. Sparto, 267 F.2d 425, 430 (5th Cir.1959), the court observed that [a] nuisance may be caused by negligence and may exist irrespective of negligence. See also Wood v. Picillo, 443 A.2d 1244, 1247 (R.I.1982) ("Distinguished from negligence liability, liability in nuisance is predicated upon unreasonable injury rather than upon unreasonable conduct."); Branch v. W. Petroleum, Inc., 657 P.2d 267, 274 (Utah 1982) ("Unlike most other torts, [nuisance] is not centrally concerned with the nature of the conduct causing the damage, but with the nature and relative importance of the interests interfered with or invaded.").
The discussion of nuisance in Prosser also recognizes that negligence is not an element of this tort:
[C]onduct may often result in substantial interference, as when a cement factory locates next to a small farmer, without such conduct being unreasonable, and even when defendant is exercising utmost care while utilizing all the technical know-how available. It has often been observed that liability, if imposed in such a case, is liability without fault. But this is a mistake. The harm is intentional. Private property cannot be physically harmed or its value impaired in this way, however socially desirable the conduct, without payment being made for the harm done, if the interference that is the consequence of the activity is substantial and considered to be unreasonable.
[Prosser Keeton on Torts 87 at 625 (5th ed. 1984).]
Most significantly, in Martins v. Interstate Power Co., 652 N.W.2d 657, 660-65 (Iowa 2002), cert. denied, 538 U.S. 1013, 123 S.Ct. 1930, 155 L.Ed.2d 849 (2003), the court held that a property owner could maintain a nuisance claim against an electric utility for NEV on his property without proving that the utility had been negligent. In reaching this conclusion, the court stated:
Negligence may or may not accompany a nuisance; negligence, however, is not an essential element of nuisance. If the condition constituting the nuisance exists, the person responsible for it is liable for resulting damages to others even though the person acted reasonably to prevent or minimize the deleterious effect of the nuisance.
[Id. at 660 (quoting Bormann v. Bd. of Supervisors, 584 N.W.2d 309, 315 (Iowa 1998), cert. denied, 525 U.S. 1172, 119 S.Ct. 1096, 143 L.Ed.2d 96 (1999)).]
Consistent with these principles, the trial court did not instruct the jury that it had to find defendant negligent in order to impose liability for nuisance. Instead, the court instructed the jury, in language taken almost verbatim from the model jury instruction, Model Jury Charge (Civil), 5.75 (Nuisance) (Dec. 1987), that:
The word nuisance means an unreasonable interference with the use and the *312 enjoyment of one's land which results in material interference with the ordinary comfort of human existence; that is, annoyance, inconvenience, discomfort, or harm to the person or the property of another. An owner of property has the right to reasonable use of his or her land. In determining what is reasonable you must weigh the utility of the defendant's conduct against the strength of harm suffered by the plaintiff.
This instruction was fully consistent with Sans and the cases in other jurisdictions which recognize that a showing of negligence is not an element of nuisance.
Therefore, we reject defendant's argument that the jury finding that it was not negligent precluded a finding that it created a nuisance on plaintiffs' property.

VI.
Defendant also argues that a new trial is required because the trial court erroneously conveyed the impression to the jury it conceded creating a temporary nuisance up until the time it allegedly fixed the NEV problem on plaintiffs' property.
"[A]n appellate court will not disturb a jury's verdict based on a trial court's instructional error `where the charge, considered as a whole, adequately conveys the law and is unlikely to confuse or mislead the jury, even though part of the charge, standing alone, might be incorrect.'" Wade v. Kessler Inst., 172 N.J. 327, 341, 798 A.2d 1251 (2002) (quoting Fischer v. Canario, 143 N.J. 235, 254, 670 A.2d 516 (1996)). Therefore, "an appellate court must consider the language surrounding an alleged error in order to determine its true effect". Viscik v. Fowler Equip. Co., 173 N.J. 1, 18, 800 A.2d 826 (2002).
In arguing that the trial court conveyed the erroneous impression to the jury that defendant conceded creating a temporary nuisance on plaintiffs' property, defendant relies upon two sentences near the end of the court's instruction regarding the law of nuisance, which stated:
Now, question number five we're dealing with a new term, too. This is a third assertion of a cause of action or relief that the plaintiff is seeking, and it's called a nuisance. Now, plaintiff alleges that the defendant created a nuisance on their property which resulted in damages suffered by the plaintiff[s] and also damages to their property. Plaintiff asserts that the existence of excess neutral to earth voltage on their property constitutes a nuisance. The word nuisance means an unreasonable interference with the use and the enjoyment of one's land which results in material interference with the ordinary comfort of human existence; that is, annoyance, inconvenience, discomfort, or harm to the person or the property of another. An owner of property has the right to reasonable use of his or her land. In determining what is reasonable you must weigh the utility of the defendant's conduct against the strength of harm suffered by the plaintiff. The question is not simply whether a person here, that is the plaintiffs, are annoyed or disturbed, but whether the annoyance or disturbance arises from an unreasonable use or an intrusion on the plaintiffs' land.... The test is whether the defendant's activities about which the plaintiff complains materially and unreasonably interferes with the plaintiffs' use of their property according to the simple test and unaffected notions of general prevailing....
What the law basically says, folks, is as part of society we all have times when we're annoyed, but that's not the criteria. You have to determine whether or not there was something that went beyond *313 that. Was it an unreasonable interference with the activities and use of their property? Plaintiffs assert to you that because of the condition of the property they could not use their backyard, they could not use their facilities. [Defendant] says, "After we addressed the issue, you no longer had the nuisance. Like everybody else, we have stray voltage on the property but it no longer became a nuisance," and, therefore, they say they are not responsible beyond that. So that's your evaluation to be made. Okay?
[Emphasis added.]
Considered in isolation, the underscored part of the court's instructions could be understood to suggest that defendant conceded it had created a temporary nuisance on plaintiffs' property. However, when the instructions are considered as a whole, we do not believe the jury could have been misled in this regard. Immediately after the part of the court's instructions defendant relies upon in support of this argument, the court stated:

Now, number six, once again you have to determine if you find that there's a nuisance, you have to determine whether or not that nuisance was a proximate cause of any injury suffered by the plaintiffs.
[Emphasis added.]
Moreover, the court's damages instructions regarding plaintiffs' nuisance claim also made it clear that defendant's creation of a nuisance on plaintiffs' property was a disputed issue the jury had to decide before determining the amount of damages:
I'm coming to the end, folks. The last one I want to talk to you about is damages with respect to nuisance. If you determine that [defendant] created a nuisance on the plaintiffs' property, then the plaintiff is entitled to recover for any damage that results in the interference with the use of one's land for the inconvenience and disruption of daily activities. You must determine how the nuisance has interfered with the use of the plaintiffs' land through inconvenience and disruption of the daily activities. This measure of damages is what a reasonable person would consider to be adequate and just under the circumstances of this case to compensate the plaintiffs for any loss you determine that they have suffered. The amount again is left to your sound judgment and sound discretion. Use your common sense and use your collective wisdom and experience as human beings and as members of the jury to determine whether you believe that they suffered any inconvenience in the use of their property and the value of that inconvenience.
[Emphasis added.]
Therefore, the court's brief suggestion that defendant conceded liability for creation of a temporary nuisance could not have misled the jury because the remainder of the court's instructions made it clear that this was a contested issue.

VII.
Defendants also argue that the trial court erred in refusing to instruct the jury that plaintiffs had a duty to mitigate their damages by moving out of their home or attempting to sell it; that the court erred in denying defendant's motion under Rule 4:50-1(f) to vacate the judgment in plaintiffs' favor based on the fact that they constructed a swimming pool in their backyard after the trial; and that the court erred in awarding plaintiffs prejudgment interest on the part of the judgment reflecting the diminution of value of their property. These arguments are so clearly without merit they do not warrant discussion. *314 R. 2:11-3(e)(1)(E). We only note, regarding defendant's argument that the trial court erred in awarding prejudgment interest for the portion of plaintiffs' damages reflecting diminution in value of their property, that Rule 4:42-11(b) mandates an award of prejudgment interest in tort cases subject to the court's authority to suspend the running of such interest "in exceptional cases." The court did not abuse its discretion in determining that defendant failed to show that this was an "exceptional case" that warranted the court's invocation of this authority.
Affirmed.
NOTES
[1] For a fuller discussion of the phenomenon of NEV, see Peter G. Yelkovac, Homogenizing the Law of Stray Voltage: An Electrifying Attempt to Corral the Controversy, 28 Val. U.L.Rev. 1111, 1117-20 (1994).
[2] Although plaintiffs state that N.J.S.A. 20:3-26(c) "requires" such an award to a prevailing party in an inverse condemnation action, this section actually provides for such an award "in [the court's] discretion."
[3] There is an exception to this general rule if the government temporarily appropriates private property for its own exclusive use. See Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (finding compensable taking where military temporarily commandeered laundry plant for use during World War II); see also United States v. Pewee Coal Co., 341 U.S. 114, 115-17, 71 S.Ct. 670, 671, 95 L.Ed. 809, 813 (1950). This exception does not apply to the present case because defendant did not appropriate plaintiffs' property.
[4] Majestic Realty Assocs. v. Toti Contracting Co., 30 N.J. 425, 432-40, 153 A.2d 321 (1959), upon which defendant relies, did not involve the elements of the tort of nuisance but rather whether a landowner could be held vicariously liable for the negligence of an independent contractor the landowner hired to do demolition work on its property.