**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1183-23

K.C.,

    Plaintiff-Appellant,

v.

CHRISTOPHER DOYLE,

    Defendant-Respondent.

_____

           Submitted March 4, 2025 – Decided March 18, 2025

           Before Judges Susswein, Perez Friscia and Bergman.

           On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0865-19.

           Daniel S. Szalkiewicz (Daniel Szalkiewicz & Associates, PC), attorney for appellant.

           Chamlin Uliano & Walsh, attorneys for respondent (James J. Uliano, of counsel; Andrew T. Walsh, on the brief).

PER CURIAM

Plaintiff K.C. appeals from the October 20, 2023 Law Division order denying her motion for counsel fees and costs against defendant Christopher Doyle after a jury found he was liable under the invasion of privacy statute (the statute), N.J.S.A. 2A:58D-1, and awarded her compensatory damages. Having reviewed the record, parties' arguments, and applicable legal principles, we reverse and remand for further proceedings.

I.

K.C. attended a New Jersey High School (HS), and Doyle was her teacher. Doyle taught at the HS from 2004 until 2019. He also coached K.C.'s sister in a sport. After graduating from the HS, K.C. attended, and graduated from, college.

On March 26, 2018, a HS classmate messaged K.C. on Facebook to warn that photos of women were being shared without their consent on a website and that K.C.'s images were posted. The conscientious classmate forwarded K.C. the link to her posted intimate images, which were under a tab identifying their HS town, K.C.'s first name, and the first initial of her last name. The website had fourteen intimate images of K.C., including images of her face and exposed genitalia. After K.C. learned the website was called Anon-IB, she researched how to remove her images and thereafter contacted legal counsel for assistance.

2

The fourteen images were private photographs K.C. had taken with her cell phone during college and only shared with her boyfriend of about four years. She had sent him the photographs via text messages between 2013 and 2015. In 2015, K.C.'s boyfriend advised her his phone was stolen. A year or two later, they ended their relationship on good terms.

After K.C.'s counsel subpoenaed the user data of the person who posted the images, Anon-IB provided IP address information. She then subpoenaed the corresponding cable company to determine who the IP address was assigned to. In December 2018, K.C. learned the images were posted from Doyle's IP address, and she believed he had uploaded her intimate images. Near the time of the posting, K.C. received an influx of Facebook messages from unknown men.

On April 5, 2023, K.C. filed a complaint against Doyle alleging: a violation of the statute, N.J.S.A. 2A:58D-1; intentional inflection of emotional distress; and common law invasion of privacy by intrusion on seclusion. Doyle

A-1183-23

thereafter filed an answer and multiple discovery motions.  During discovery, the parties were deposed.[1]

After K.C. learned Doyle had the IP address associated with disseminating her intimate images, she felt further violated because her former teacher was involved in sharing and viewing her private photographs without her consent. She had no prior mental health treatment, but after learning her images were posted, K.C. began treatment for panic attacks, anxiety, fear of being alone, paranoia, and other mental health issues.  After learning Doyle shared her images on Anon-IB, she alleged her symptoms worsened.  K.C. alleged she remained in constant fear because she could not permanently remove her intimate images from all online platforms.  Fear that her images would resurface and be redistributed plagued K.C.  She felt unsafe because the posted images had her full first name, the first initial of her last name, and her HS town.  A treating psychiatrist prescribed K.C. with medication for post-traumatic stress disorder (PTSD), depression, and anxiety.

---

[1]  We discern from the record provided that the facts are largely uncontested. On appeal, we have been provided the parties depositions but not the trial transcripts. See R. 2:6-1(a)(1)(I) (requiring appellant to include in the appendix on appeal "such . . . parts of the record . . . as are essential to the proper consideration of the issues").

K.C. explained that to deal with her pain and fear, she began advocating and educating for herself and others. She changed her career path to one in social work, hoping to assist victims who have been sexually abused. K.C. also used social media, including TikTok, to share her experience. K.C. believed this process would help her emotionally heal and recover.

Doyle admitted to visiting the Anon-IB website on a daily or weekly basis and saving naked images from different pornography websites. He would sometimes visit websites containing pornography for sexual gratification. He admitted knowing K.C. from HS and viewing ten to fifteen images of her, including the nude photographs, on the Anon-IB website. Doyle could not recall whether he posted the images of her on the Anon-IB website and did not know how his IP address was tied to the posting of her images. In 2019, the electronic devices Doyle had used at the time K.C.'s images were posted were destroyed in an accidental car fire.

During the litigation, K.C. retained two experts. The experts authored reports and testified through de bene esse depositions. One expert opined on the psychological effects of nonconsensual pornography on victims and the other on the permanency of K.C.'s injuries. The experts each charged a fee for producing a report and testifying. K.C.'s treating therapist also testified. Defendant's

A-1183-23

psychology expert found within a reasonable degree of medical probability that K.C. suffered from PTSD.

After the six-day jury trial, on August 21, 2023, the jury returned a verdict in favor of plaintiff, awarding $10,000 in compensatory damages and declining to award punitive damages. The jury found Doyle was liable under the statute and for common law invasion of privacy but was not liable for intentional infliction of emotional distress.

K.C. moved for attorney's fees and costs. Her counsel filed a certification seeking: attorney's fees of $184,590; a fee enhancement of $46,147.50; and costs and expenses of $14,930.24, including $600 for filing the complaint and motion fees, as well as $52.99 for service. The total award requested was $245,667.74. On October 20, after argument, the court issued an order and accompanying oral decision denying plaintiff's application under the statute for attorney's fees, a fee enhancement, and costs and expenses.

On appeal, K.C. contends the court: abused its discretion in declining to award costs and attorney's fees because it ignored her bona fide claims and the legislative intent; erred in imposing additional hurdles on K.C. in addressing her attorney's fee application and failed to consider the need to attract competent

counsel for similar claims; erred in considering matters outside of the record, including settlement discussions; and erred in failing to address or award costs.

## II.

"We review the trial court's award of fees and costs in accordance with a deferential standard." Hansen v. Rite Aid Corp., 253 N.J. 191, 211 (2023). "Such an award 'will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion.'" Ibid. (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Only when a court's fee determination "was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment," should the reviewing court intervene. Ibid. (quoting Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016)).

The invasion of privacy statute provides:

> a. An actor who, in violation of []L. 2003, c. 206 ([N.J.S.A.] 2C:14-9), . . . reproduces in any manner . . . the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court.
>
> b. An actor who, in violation of []L. 2003, c. 206 ([N.J.S.A.] 2C:14-9), discloses any photograph . . . or any other reproduction of . . . the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court.

A-1183-23

[N.J.S.A. 2A:58D-1(a) to (b).]

N.J.S.A. 2C:14-1 defines intimate parts as "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person."

The statute specifically provides that "[t]he court may award" a plaintiff:

> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;
>
> (2) punitive damages upon proof of willful or reckless disregard of the law;
>
> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and
>
> (4) such other preliminary and equitable relief as the court determines to be appropriate.
>
> [N.J.S.A. 2A:58D-1(c).]

Further, the statute provides that "[a] conviction of a violation [under N.J.S.A. 2C:14-9] . . . shall not be a prerequisite for a civil action brought pursuant to this section." N.J.S.A. 2A:58D-1(c).

Rule 4:42-9(a)(8) permits attorney's fees "[i]n all cases where attorney's fees are permitted by statute." See generally Mason v. City of Hoboken, 196 N.J. 51, 70-71 (2008) (listing "fee-shifting statutes that allow for an award of reasonable attorney's fees to a prevailing party").

8

III.

There is no dispute that K.C. is a prevailing party under the statute. The statute clearly permits the court to award K.C. "reasonable attorney's fees and other litigation costs." N.J.S.A. 2A:58D-1(c)(3). The statute's plain language does not mandate that a court award a successful plaintiff attorney's fees and costs, but it authorizes a court to make such an award where appropriate. While we agree with the court's plain language interpretation that the statute "contemplates that there may be situations where, even if there is a violation . . . , attorney's fees . . . [may] not be justified," we part ways with its conclusion that attorney's fees and costs were unwarranted in the present case, as the court's analysis was misplaced.

The court's oral decision, which consisted of approximately three transcript pages, first noted that the statute "refers to the criminal statute" regarding invasion of privacy, N.J.S.A. 2C:14-9(b).[2] In referencing the criminal

---

[2] N.J.S.A. 2C:14-9(b)(1) states, "An actor commits a crime of the third degree if, knowing that he is not licensed or privileged to do so, he [or she] . . . reproduces in any manner, the image of another person whose intimate parts are exposed . . . , without that person's consent . . . ." N.J.S.A. 2C:14-9(b)(2) states, "An actor commits a crime of the fourth degree if, knowing that he is not licensed or privileged to do so, he [or she] . . . reproduces in any manner, the image of the undergarment-clad intimate parts of another person, without that person's consent . . . ."

statute, the court stated that those types of violations under the statute are "like someone taking photographs through a peephole" and "[r]evenge porn," which "are the type of situations that clearly are offensive." While noting Doyle "got caught" posting the intimate images of K.C., the court found it relevant that it did not know "how many times they were posted and re-posted by someone else." It stated, "maybe when [Doyle] recognized that [K.C.] was a student in a school where he was a teacher, maybe he should[ not] have posted those photos." The court also found it relevant in reviewing K.C.'s fee application that she: "ha[d] used this situation and her continued presence on the internet, almost making . . . what would otherwise be . . . a horrible violation of her privacy, . . . part of her identity"; and had maintained "it[ was] part of the healing process."

Moreover, although the jury had found Doyle liable, the court questioned why K.C. "was offended that [Doyle] should ever be allowed to teach young girls again." Finally, it explained that K.C.'s application for fees should be denied based on "the [jury's] relatively low award" and found the jury's "refusal to award punitive damages[] was an indication . . . that [the jury] did not buy [K.C.'s] argument that [Doyle] [wa]s some sort of predator."

Notably, while the statute references a criminal violation for conduct under N.J.S.A. 2C:14-9, it specifically provides that "the court may award" the

afforded statutory relief to any successful plaintiff, as a criminal conviction is not "a prerequisite for a civil action brought pursuant to this section." N.J.S.A. 2A:58D-1(c). The statute's plain language clearly authorizes a trial court to award fees to a plaintiff who successfully proves a violation. The statute contains no fee award preclusion based on the court's view of the severity of the violation after a jury's verdict.

The court's reliance on irrelevant and inappropriate considerations served as an invalid basis to deny K.C.'s fee application under the statute and Rule 4:42-9(b). The Rule governing the court's consideration of K.C.'s fee application provides that "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by [Rule of Professional Conduct (RPC)] 1.5(a)." RPC 1.5(a) mandates, "A lawyer's fee shall be reasonable" and provides the following factors for the court to consider in determining the reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

The court erred in failing to consider seven of the enumerated factors. Further, the court erroneously denied K.C.'s fee application based on:  what it perceived as less egregious violations of the statute than acts prosecuted under the criminal statute; matters outside of the record, including the possible actions of others in posting or reposting K.C.'s intimate images; conjecture that the jury's verdict indicated Doyle's violation was de minimis; and how K.C. responded to the nonconsensual posting of her intimate images by confronting the violation.  See City of Englewood v. Exxon Mobile Corp., 406 N.J. Super. 110, 125 (App. Div. 2009) ("RPC 1.5(a) 'must inform the calculation of the reasonableness of a fee award in . . . every case' and . . . 'then [the court] must state its reasons on the record for awarding a particular fee' pursuant to 1:7-4(a)." (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 22 (2004))).

A-1183-23

In moving for an award, K.C.'s counsel appropriately submitted a certification in support of their motion for attorney's fees and cost, which included attached copies of the time entries for legal services rendered and the attorneys' billable hourly rates. Counsel referenced a contingency fee arrangement, expanded on the attorneys' experience in the area, the public policy behind representing victims of nonconsensual pornography, and the risk associated in taking such cases. The court's decision made scant reference to the attorney's certification and undertook no analysis regarding the issues surrounding K.C.'s pursuit of the civil action. Further, the court made no specific mention of Rule 4:42-9(b)'s nor RPC 1.5(a)'s factors and failed to review the facts set forth in K.C.'s application.

A court abuses its discretion "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Mims v. City of Gloucester, 479 N.J. Super. 1, 5 (App. Div. 2024) (quoting Kornbleuth v. Westover, 241 N.J. 289, 302 (2020)). In declining to award fees, the court's departure from the plain statutory intent and reliance on irrelevant considerations was an abuse of discretion. For these reasons, we are constrained to reverse and remand for the court to address and weigh each Rule 4:42-9(b) factor, including the RPC 1.5(a) factors.

Regarding RPC 1.5(a)(4), "the results obtained," we note that the jury awarded compensatory damages of $10,000. Therefore, the jury indisputably determined Doyle violated the statute, and the court's assessment negating that jury's verdict was inappropriate. The court's conclusion that "the limited result that the jury gave" supported awarding no fees has no basis in law. A court should not reject a fee award predicated on the fact that the jury's damages award was low or only award fees proportionately to the amount of damages a plaintiff recovered. See Rendine, 141 N.J. at 336. "Under . . . state fee-shifting statutes, the first step in the fee-setting process is to determine the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate." United Consumer Fin. Servs. Co. v. Carbo, 410 N.J. Super. 280, 311 (App. Div. 2009) (quoting Rendine, 141 N.J. at 334-35). "The results obtained are relevant, and reductions based upon the relative significance of successful and unsuccessful claims are appropriate." Ibid. The court may reduce the lodestar, if the hours exceed those that competent counsel would have reasonably expended to obtain a similar result. See Rendine, 141 N.J. at 336. Therefore, "if a successful plaintiff has achieved only limited relief in comparison to all of the relief sought, the court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained, and, if not,

reduce the award proportionately." Stoney v. Maple Shade Twp., 426 N.J. Super. 297, 318 (App. Div. 2012) (quoting Singer v. State, 95 N.J. 487, 500 (1984)). However, "[w]hen the 'unsuccessful claims are related to the successful claims, either by a "common core of facts" or "related legal theories," the court must consider the significance of the overall relief obtained to determine whether those hours devoted to the unsuccessful claims should be compensated.'" Kluczyk v. Tropicana Prods., Inc., 368 N.J. Super. 479, 500 (App. Div. 2004) (quoting Singer, 95 N.J. at 500).

On remand, the court must also address K.C.'s application for a fee enhancement. We note there is no requirement that a fee enhancement be awarded in every case. See Saffos v. Avaya Inc., 419 N.J. Super. 244, 277 (App. Div. 2011); Gallo v. Salesian Soc'y, Inc., 290 N.J. Super. 616, 660 (App. Div. 1996). "The 'justification for enhancement is . . . [that] the lodestar amount is not a reasonable fee to be charged to the non-prevailing party because it does not reflect the risk of nonpayment.'" Carbo, 410 N.J. Super. at 311 (alteration in original) (emphasis omitted) (quoting Rendine, 141 N.J. at 341). "[A] statutory fee and the enhancement are 'provided, as a policy matter in specific types of cases, to remedy the problem of unequal access to the courts.'" Id. at 311-12 (quoting Baker v. Nat'l State Bank, 353 N.J. Super. 145, 161 (App. Div.

A-1183-23

2002)). Therefore, the court in determining whether to grant a fee enhancement shall consider "[t]he significance of the public interest in pursuit of the claims." Id. at 311 (citing Rendine, 141 N.J. at 341). The court shall also consider "[i]n determining and calculating a fee enhancement, . . . the result achieved, the risks involved, and the relative likelihood of success in the undertaking." Furst, 182 N.J. at 23. To determine if a fee enhancement is appropriate, the court must determine if the "case was taken on a contingent basis; whether the attorney was able to mitigate the risk of nonpayment in any way; and whether other economic risks were aggravated by the contingency of payment." Walker v. Giuffre, 209 N.J. 124, 139 (2012) (quoting Rendine, 141 N.J. at 339). The court shall also consider the overall strength of the case when determining whether to award a contingency fee enhancement. See ibid.

We next consider K.C.'s contention that the court erred in failing to award any costs. We agree. K.C. requested $14,930.24 in costs as certified to by her counsel. In addition to the statute permitting the court to award costs, Rule 4:42-8(a) also generally entitles a prevailing party to certain costs even if there is an "incomplete success." Gallo, 290 N.J. Super. at 660. "[A] prevailing party may be denied an award of costs only for 'special reasons.'" Knight v. AAA

16

Midatlantic Ins. Co., 394 N.J. Super. 333, 337 (App. Div. 2007) (quoting Schaefer v. Allstate N.J. Ins. Co., 376 N.J. Super. 475, 487 (App. Div. 2005)). "Authority for assessing costs must be found in either the Court Rules or a statute." Buccinna v. Micheletti, 311 N.J. Super. 557, 561 (App. Div. 1998); see also id. at 564-65 (discussing the general rule concerning costs of depositions and exceptions); A.J. Tenwood Assocs. v. Orange Senior Citizens Hous. Co., 200 N.J. Super. 515, 519 (App. Div. 1985); Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374 (App. Div. 2011); N.J.S.A. 22A:2-8; N.J.S.A. 2A:15-59. While the trial court is afforded some degree of discretion, its denial of costs requires specific findings justifying departure from Rule 4:42-8(a).

In the present matter, the court denied K.C. any of the costs her attorney certified to without providing its reasons. R. 1:7-4(a) (requiring trial courts to make sufficient "find[ings] [of] . . . facts and state its conclusions of law"). "Naked conclusions do not satisfy the purpose of R. 1:7-4. Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980). On remand, the trial court must review the matter, in light of the Rule ordering costs "as of course to the prevailing party," and determine whether K.C.'s costs should be awarded

17

under the statute, setting forth specific reasons for the decision to permit appellate review of the exercise of discretion.

In sum, as we conclude the court's order denying K.C.'s request for attorney's fees and costs was an abuse of discretion, we reverse and remand for further proceedings consistent with this opinion. Because the court expressed opinions demonstrating "a commitment to [its] findings," we deem it prudent to assign this matter for review by a different court on remand. Carmichael v. Bryan, 310 N.J. Super. 34, 49 (App. Div. 1998); Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023); see also R. 1:12-1(d). On remand, the court hearing the matter shall conduct a detailed review of the attorneys' time entries, expenses, and costs within sixty days to determine the appropriate amount of fees and costs to be awarded.

Reversed and remanded.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division