Justice PATTERSON
delivered the opinion of the Court.
This appeal arises from an action brought by plaintiffs John and Pamela Ross, who allege that their residence was damaged by the migration of home heating oil from a leaking underground oil storage tank located at a neighboring residence. Plaintiffs asserted claims against the current and former owners of the property where the underground storage tank was located, based upon common law theories of negligence, strict liability, private nuisance and trespass, as well as violations of the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24 (Spill Act). Plaintiffs also sued the insurers who provided homeowners’ coverage to the former owners of the neighboring property, asserting a claim for breach of the implied covenant of good faith and fair dealing, in addition to claims for nuisance and trespass.
After plaintiffs instituted their action and following their filing of an order to show cause, two of the defendant insurers conducted a remediation of the contamination on plaintiffs’ property. The trial court granted summary judgment dismissing plaintiffs’ claims against the defendant property owners and their insurers. The Appellate Division affirmed that determination.
We consider two issues raised by plaintiffs in this appeal. First, we review the Appellate Division’s judgment affirming the trial court’s grant of summary judgment dismissing plaintiffs’ private nuisance and trespass claims against the residential property owner defendants, whose insurers remediated plaintiffs’ property. We concur with the Appellate Division that no claim for private nuisance or trespass may be premised on this record, which is *498 devoid of proof of negligence, recklessness, intentional conduct, or the conduct of an abnormally dangerous activity by defendant residential property owners. We decline to expand the private nuisance and trespass causes of action recognized by New Jersey law to impose strict liability in the setting of this ease.
We also agree with the Appellate Division that plaintiffs may not assert a bad-faith claim against defendant insurers that provided homeowners’ coverage to defendant Karen Lowitz (Lowitz). Absent an assignment of rights from Lowitz to plaintiffs, or evidence that Lowitz and her insurers agreed to confer on plaintiffs the status of third-party beneficiaries to their insurance contract, plaintiffs have no direct claim against Lowitz’s insurers based on an alleged breach of the implied covenant of good faith and fair dealing.
Accordingly, we hold that the trial court properly dismissed plaintiffs’ claims and affirm the judgment of the Appellate Division.
I.
On a date that is not revealed by the record, an underground tank intended for the storage of home heating oil was installed on the property designated as 72 Leighton Avenue in Red Bank. From 1988 to 1999, that property was owned by defendant Susan Ellman (Ellman). Ellman’s homeowner’s insurance coverage was underwritten by defendant High Point Preferred Insurance Company (High Point).
In 1999, Ellman sold 72 Leighton Avenue to Lowitz. Prior to closing, Lowitz arranged for the oil storage tank on the property to be tested by an environmental consultant. The consultant found no leakage in the storage tank.
Lowitz owned 72 Leighton Avenue from 1999 to October 2003. Until February 2003, Lowitz’s homeowner’s insurance coverage was issued by defendant State Farm Fire and Casualty Company (State Farm). Beginning on March 1, 2003, Lowitz obtained her *499 homeowner’s insurance coverage from defendant New Jersey-Manufacturers Insurance Company (NJM).
In August 2003, Lowitz entered into a contract to sell 72 Leighton Avenue to defendant Calvin Haley (Haley). Prior to closing, Lowitz arranged for an environmental consultant to inspect the underground storage tank. The consultant located a leak. Lowitz notified State Farm and NJM, and the insurers arranged and paid for the remediation of the leaked oil on Lowitz’s property.
In 2004, plaintiff John Ross bought the residential property designated as 66 Leighton Avenue. Plaintiffs contend that John Ross was unaware that the oil tank on Lowitz’s property had leaked when he bought the property. According to plaintiffs, John Ross first learned in 2006 that the oil had contaminated Lowitz’s property and an adjoining property, 70 Leighton Avenue, but he did not learn at that time that oil had migrated to his own property.
In late 2006, plaintiff John Ross put his property up for sale and, in May 2007, signed a contract with a prospective buyer to sell the property for a purchase price of $325,000. A week after the contract was signed, an environmental consultant retained by State Farm and NJM informed plaintiff that the oil had migrated to his property. The prospective purchaser of the property cancelled the contract, and John Ross continued to own the property.[1]
After an environmental consultant retained by High Point took samples from their property, plaintiffs retained counsel. In August 2007, plaintiffs’ counsel sought a commitment from State Farm and NJM that the insurers would promptly arrange for remediation of the oil on John Ross’s property and for the *500 payment of plaintiffs’ expenses incidental to that remediation. In October 2007, State Farm and NJM agreed to pay $20,000 toward the replacement of plaintiffs’ deck, pool and retaining wall, in the event that remediation on the property necessitated the destruction of those structures. According to plaintiffs, State Farm and NJM were not responsive to plaintiffs’ counsel’s repeated request that they commence remediation and pay plaintiffs’ expenses. Plaintiffs further assert that State Farm and NJM delayed the remediation until after plaintiffs filed their lawsuit and order to show cause.
In September 2008, plaintiffs commenced this action in the Law Division. In an amended complaint filed shortly thereafter in October 2008, plaintiffs named as defendants, Lowitz, Ellman, State Farm and NJM.[2] Against all defendants, they pled claims based on negligence, strict liability, nuisance, trespass and Spill Act liability. Plaintiffs’ nuisance and trespass claims were premised on the continued presence of hazardous substances leaked from the homeowner defendants’ underground storage tank. They did not allege in their original or amended complaint a nuisance or trespass claim for damages resulting from the delay that occurred before the property was remediated.
Plaintiffs also asserted claims against the insurers. Plaintiffs claimed that they were third-party beneficiaries of the insurance contracts between the insurers and their insureds, and alleged that the insurers violated the covenant of good faith and fair dealing. Plaintiffs sought remediation, damages for the alleged loss of the use of their home, and damages for the alleged diminution in the value of their property.
In July 2009, plaintiffs filed an order to show cause before the trial court. Shortly thereafter, plaintiffs, State Farm and NJM entered into an agreement, memorialized in a consent order entered by the trial court, regarding the terms of the remediation *501 of plaintiffs’ property.[3] Thereafter, environmental consultants retained by State Farm and NJM excavated portions of plaintiffs’ property to remove the contamination. That process took approximately seven weeks and was completed in late October 2009. In August 2010, the New Jersey Department of Environmental Protection (DEP) issued a “No Further Action Letter,” pursuant to N.J.S.A. 58:10B-13.1.
State Farm, NJM, Ellman, and Lowitz moved for summary judgment. The trial court granted all defendants’ summary judgment motions. With respect to State Farm and NJM, the trial court held that because plaintiffs were not parties to the insurance contracts at issue, they had no standing to recover the policy proceeds, and that public policy did not mandate that a third party be deemed the intended beneficiary of the insurance company’s contractual duty to its insured to act in good faith with respect to a settlement. Accordingly, the trial court dismissed plaintiffs’ claims against State Farm and NJM.
With respect to Ellman and Lowitz, the trial court reasoned that there was no evidence that either homeowner acted negligently with respect to the maintenance of the oil tank on the property that each defendant successively owned. The court also concluded that the maintenance of the oil tank did not constitute an abnormally dangerous activity. It found that neither plaintiffs’ private nuisance claims, nor their trespass claims, could be maintained in the setting of this case.[4]
Plaintiffs appealed the trial court’s grant of summary judgment. In an unpublished opinion, the Appellate Division affirmed the *502 trial court’s determination. Analyzing the record in accordance with section 822 of the Restatement (Second) of Torts (1979) (Restatement), the panel agreed with the trial court that liability for private nuisance cannot be imposed without proof of the defendants’ negligence, recklessness or intentional act, unless defendants have conducted an abnormally hazardous activity that warrants the imposition of strict liability. It determined that the maintenance of an underground tank for the storage of home heating oil does not constitute such an abnormally hazardous activity. The panel also concurred with the trial court’s dismissal of plaintiffs’ third-party claims against State Farm and NJM. It held that the claims were properly dismissed because plaintiffs were not assigned rights under the insurance contracts between the insurers and their insured and there was no evidence that the parties to those contracts intended to confer a direct right of action on plaintiffs.
We granted certification. 218 N.J. 273, 94 A.3d 910 (2014).
II.
Plaintiffs allege that the trial court and Appellate Division misconstrued their private nuisance claim because they did not address the existence of a claim under section 824 of the Restatement based on defendants’ failure to abate a private nuisance. Plaintiffs contend that section 824 creates a cause of action that is separate and independent of a cause of action under section 822 of the Restatement. Plaintiffs also assert that the Court should recognize a related claim based on failure to abate the nuisance within a reasonable period of time. They contend, for the first time on appeal, that defendants’ conduct constituted a continuing trespass. Plaintiffs also contend that they are third-party beneficiaries of the insurance contracts between State Farm and NJM and their insured and that there is a special relationship between plaintiffs and the insurers in the factual setting of this case.
Ellman and Lowitz argue that because the storage of home heating oil is not unreasonably dangerous, and there is no evi *503 dence that they acted intentionally, recklessly or negligently to create a private nuisance, plaintiffs cannot establish a claim under section 822 of the Restatement. They argue that plaintiffs’ reliance on section 824 of the Restatement is misplaced because liability cannot be imposed pursuant to Restatement section 824 in the absence of a cause of action for nuisance under section 822 of the Restatement. Ellman and Lowitz contend that there is no evidence to support the assertion that defendants unreasonably delayed the abatement of the alleged nuisance. Lowitz additionally asserts that if she did owe a duty to plaintiffs, she discharged that duty with due care by notifying her insurers of their claim and that she had no authority to control their actions.
State Farm and NJM argue that in the absence of an assignment of rights under their contracts with their insured, or an intent on the part of the parties to the contract to designate plaintiffs as third-party beneficiaries of the contract, plaintiffs may not pursue a bad faith claim against the insurers. They contend that plaintiffs had no “special relationship” with the insurers that would justify the imposition of liability for a breach of the covenant of good faith and fair dealing. State Farm also counters plaintiffs’ contention that in the absence of a direct claim, no party will be responsible for the damage to their home. State Farm notes that it recognized its obligation to remediate and restore plaintiffs’ property and that it conducted that remediation and restoration to the satisfaction of DEP and at no cost to plaintiffs. It represents that plaintiffs were fully compensated for their relocation costs during the remediation process.
III.
A.
We review the trial court’s entry of summary judgment in accordance with the standard set forth in Rule 4:46-2(c). State v. Perini Corp., 221 N.J. 412, 425, 113 A.3d 1199 (2015) (citations omitted). That standard compels a court to grant summary *504 judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46 — 2(c). When there is no issue of fact, and only a question of law remains, an appellate court reviews that question de novo; the legal determinations of the trial court and Appellate Division are not entitled to any special deference. Gere v. Louis, 209 N.J. 486, 499, 38 A.3d 591 (2012) (citing Raspa v. Office of Sheriff, 191 N.J. 323, 334, 924 A.2d 435 (2007); Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293, 777 A.2d 334 (2001); Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995)). When “summary judgment is based on an issue of law, we owe no deference to an interpretation of law that flows from established facts.” Perini Corp., supra, 221 N.J. at 425, 113 A.3d 1199 (citing Toum of Kearny v. Brandt, 214 N.J. 76, 91, 67 A.3d 601 (2013)).
On this record, there is no genuine issue of material fact with respect to both the private nuisance and trespass claims against all defendants or plaintiffs’ assertion of a third-party bad faith claim against State Farm and NJM. Accordingly, we review de novo the trial court’s legal determinations on both issues.
B.
Plaintiffs’ private nuisance and trespass claims are premised on the allegation that home heating oil from an underground storage tank at 72 Leighton Avenue migrated to their nearby property.[5] They assert that by virtue of the continued presence of oil that *505 migrated from the storage tank, defendants should be held liable for private nuisance and for trespass.[6]
A cause of action for private nuisance derives from the defendant’s “unreasonable interference with the use and enjoyment” of the plaintiffs property. Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448, 149 A.2d 599 (1959); James v. Arms Tech., Inc., 359 N.J.Super. 291, 329, 820 A.2d 27 (App.Div.2003). When analyzing nuisance claims, “our courts are guided by the principles set forth in the Restatement (Second) of Torts.” Smith v. Jersey Cent. Power & Light Co., 421 N.J.Super. 374, 389, 24 A.3d 300 (App.Div.) (citing Ventron Corp., supra, 94 N.J. at 491-92, 468 A.2d 150), certif. denied, 209 N.J. 96, 35 see Birchwood Lakes Colony Club v. Borough of Medford Lakes, 90 N.J. 582, 592, 449 A.2d 472 (1982); James, supra, 359 N.J.Su per. at 329-30, 820 A.2d 27.
Two Restatement sections, sections 822 and 824 of the Restatement, are central to our analysis.[7] Restatement section 822 identifies the elements of a cause of action for private nuisance:
One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another’s interest in the private use and enjoyment of land, and the invasion is either
(a) intentional and unreasonable, or
(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.
*506 [Restatement § 822.]
Our courts have adopted the standard of Restatement section 822 to assess liability for private nuisance. See Birchwood Lakes, supra, 90 N.J. at 592, 449 A.2d 472 (adopting standard of Restatement section 822 in case involving wastewater discharge); Burke v. Briggs, 239 N.J.Super. 269, 272-73, 571 A.2d 296 (App.Div.1990) (applying Restatement section 822 as standard governing private nuisance claim arising from damage due to tree falling on neighbor’s property).
Under section 822 of the Restatement, liability for private nuisance may be imposed if the nuisance arose from intentional and unreasonable conduct. See, e.g., Associated Metals & Minerals Corp. v. Dixon Chem. & Research, Inc., 82 N.J.Super. 281, 287-89, 301-03, 197 A.2d 569 (App.Div.1963) (holding open truck transport and piling of sulfur that deposited sulfur dust on nearby property despite warnings to resolve issue constituted intentional and unreasonable conduct within meaning of Restatement section 822), certif. denied, 42 N.J. 501, 201 A.2d 580 (1964).
In the absence of evidence of the defendant’s fault, strict liability may be imposed in a private nuisance claim if the defendant is engaged in an abnormally dangerous activity. Burke, supra, 239 N.J.Super. at 272-73, 571 A.2d 296; see also T & E Indus., Inc. v. Safety Light Corp., 123 N.J. 371, 394-95, 587 A.2d 1249 (1991) (holding that “defendant’s processing, handling, and disposal” of radium in urban setting is “abnormally-dangerous activity” subject to strict liability); Ventron, supra, 94 N.J. at 493, 468 A.2d 150 (holding that disposing of “mercury and other toxic wastes” constitutes an “abnormally dangerous activity”). Outside that narrow setting, however, an “intentional but reasonable” or “entirely accidental” invasion does not trigger liability under a private nuisance theory. Restatement § 822 comment a. As the Restatement drafters explained, by virtue of the evolution of the law of private nuisance, “an actor is no longer liable for accidental interferences with the use and enjoyment of land but only for such interferences as are intentional and unreasonable or result from *507 negligent, reckless or abnormally dangerous conduct.” Id. § 822 comment b. Accordingly, “[ljiability for an invasion of interests in the use and enjoyment of land now depends upon the presence of some type of tortious conduct.” Id. § 822 comment c.
That essential limitation on the law of private nuisance was underscored in Birchwood Lakes, supra, in which this Court limited section 822 of the Restatement to settings involving intentional, reckless or negligent conduct, or an abnormally dangerous activity:
Private nuisance is but one possible theory for recovery of damages caused by the invasion of one’s interest in the private use and enjoyment of land. That interest may be invaded by more than one type of conduct, i.e., the conduct may be intentional, it may be unintentional but caused by negligent or reckless conduct, or it may result from an abnormally dangerous activity for which there is strict liability.
[90 N.J. at 591-92, 449 A.2d 472 (footnote omitted) (adopting Restatement section 822 analysis).] [8]
Section 824 of the Restatement, on which plaintiffs rely, does not expand private nuisance claims into settings in which there is no showing of fault and no abnormally dangerous activity being conducted. Rather, it confirms that two categories of conduct, an affirmative act and a failure to act in circumstances in which the defendant has a duty, can give rise to a claim for private nuisance:
The conduct necessary to make the actor liable for either a public or private nuisance may consist of
(a) an act; or
(b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.
*508 [Restatement § 824.]
This Court has adopted this section of the Restatement. See Birchwood Lakes, supra, 90 N.J. at 592, 449 A.2d 472 (adopting Restatement section 824 analysis); accord S. Camden Citizens in Action v. N.J. Dep’t of Envtl. Prot., 254 F.Supp.2d 486, 504 (D.N.J.2003) (applying New Jersey law).
As its commentary explains, section 824 of the Restatement authorizes the imposition of liability for a failure to satisfy a duty, as well as the commission of an affirmative act:
One is ordinarily subject to no liability to another merely because he has failed to take positive action to prevent another from being harmed. There are, however, certain circumstances under which the law imposes a duty on a person to take positive action for the protection of another and subjects him to liability if he fails to meet the standard of action required in the particular case.
[Restatement § 824 comment e (citations omitted).]
Thus, while Restatement section 824 confirms that a breach of an affirmative duty may give rise to liability in appropriate settings, it does not give rise to a strict liability claim outside of the abnormally dangerous activity setting recognized by section 822 of the Restatement.
The principle that limits private nuisance claims under section 822 of the Restatement to cases involving the defendant’s fault or abnormally dangerous activity also limits the reach of section 839 of the Restatement, the provision at the core of our dissenting colleagues’ analysis. Plaintiffs did not invoke section 839 before the trial court or on appeal. More importantly, that provision does not revive plaintiffs’ nuisance claims in the setting of this case.
Section 839 of the Restatement governs a claim that a defendant is liable for a private nuisance because he or she failed to abate an artificial condition:
A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
(a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and
*509 (b) he knows or should know that it exists without the consent of those affected by it, and
(c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it.
[Restatement § 839 (emphasis added).]
Significantly, section 839 of the Restatement imposes liability for failure to abate a nuisance only “if the nuisance is otherwise actionable.” The commentary to Restatement section 839 defines this language to “mean[] that all other elements necessary to liability under the rule stated in § 822 ... must be present in addition to the breach of duty specified in this Section.” Restatement § 839 comment g. Thus, in the absence of a showing of fault or the conduct of an abnormally dangerous activity that would support a private nuisance claim under section 822 of the Re statement, plaintiffs have no claim under section 839 of the Restatement.
Our dissenting colleagues contend that there is ambiguity in Restatement section 839 by virtue of an illustration provided in its commentary that postulates two alternative scenarios involving contamination by a leaking underground storage tank. Post at 521-23, 120 A.3d at 195-96 (citing Restatement § 839 comment f, illustration 1-2). Our colleagues acknowledge that this ease more closely resembles the first scenario presented in comment f, in which no liability is imposed where the underground storage tank leaked “[wjithout [the tank owner’s] knowledge or negligence,” “because it would not be practicable” for the owner to remove the oil from his or her neighbor’s land. Post at 522, 120 A.3d at 195. They argue, however, that the illustration in the Restatement is outdated because with modern technology, migrating home heating oil can be remediated. Post at 522-23, 120 A.3d at 195-96. Whether or not the Restatement’s drafters should update the illustration, the principle of Restatement section 839 remains the same: there is no liability under that provision unless the defendant’s conduct was “actionable” within the meaning of section 822 of the Restatement.
*510 Our courts also apply the Restatement’s standard of liability where a plaintiff pursues a trespass claim. See Siddons v. Cook, 382 N.J.Super. 1, 11-12, 887 A.2d 689 (App.Div.2005); Burke, supra, 239 N.J.Super. at 272-73, 571 A.2d 296. A defendant is liable in trespass for an “intentional[ ]” entry onto another’s land, regardless of harm. Restatement § 158. A defendant is also liable if he “recklessly or negligently, or as a result of an abnormally dangerous activity enters” onto another’s land, and the entry causes harm. Id. § 165. Liability for a “continuing trespass” arises with the “continued presence” on another’s “land of a structure, chattel, or other thing which the actor has tortiously placed there.” Id. § 161(1) & comment b. Importantly, the placement of the object on the plaintiffs land must be a “tortious[ ]” act, in that the conduct “subject[s] the actor to liability under the principles of the law of Torts,” id. § 161 comment a, defined as conduct that is intentional, negligent, or abnormally dangerous, id. § 6 comment a.
Accordingly, a defendant is not liable in trespass for “an unintentional and non-negligent entry on land in the possession of another,” regardless of the harm done. Id. § 166. The commentary confirms that strict liability is eliminated except for abnormally dangerous activities. Id. § 166 & comment b.[9] Like a private nuisance claim under section 822 of the Restatement, a cause of action for trespass requires a showing of intentional, reckless or negligent conduct, or the conduct of abnormally dangerous activity. Id. §§ 165-66.
In short, “[strict] liability without fault should not be imposed, whether that activity be classified as a nuisance or a trespass, absent intentional or hazardous activity requiring a higher standard of care or, as a result of some compelling policy reason.” Burke, supra, 239 N.J.Super. at 273, 571 A.2d 296; see also Ruiz ex rel. Ruiz v. Kaprelian, 322 N.J.Super. 460, 472-73, *511 731 A.2d 118 (App.Div.1999). Instead, “regardless of the analysis one might urge and the consequent label attached,” the outcome “should logically depend on whether the offending landowner somehow has made a negligent or unreasonable use of his land when compared with the rights of the party injured on the adjoining lands.” Burke, supra, 239 N.J.Super. at 274, 571 A.2d 296. Both of the causes of action at issue — a claim for private nuisance and a claim for trespass — are governed by that limiting principle.
Here, plaintiffs do not contend that their damages derive from negligent, reckless, or intentional and unreasonable conduct by Ellman or Lowitz. Moreover, there is nothing in the summary judgment record that would support such a claim. There is no suggestion that the underground oil storage tank leaked during the period in which Ellman owned the property at 72 Leighton Avenue. Lowitz arranged for the tank to be tested before she purchased the property in 1999, and no leak was detected at that time. When Lowitz contracted to sell the property four years later, she again arranged for a consultant to test the tank, and promptly notified her insurers when the consultant detected a leak in the underground storage tank. These homeowners’ actions do not support an allegation of an intentional tort, recklessness or negligence, and no such allegation is premised on their conduct.
Relying exclusively on section 824 of the Restatement, plaintiffs argue that Ellman or Lowitz should be held liable on a theory of private nuisance or trespass because of delays in the defendant insurers’ remediation of the contamination on plaintiffs’ property, i.e. defendants’ “failure to act.” However, because plaintiffs cannot show fault or the conduct of an abnormally dangerous activity on this record, as required by section 822 of the Restatement, they do not have a viable theory of liability under Restatement section 824. In the absence of an abnormally dangerous activity, the homeowner defendants cannot be held strictly liable for damages allegedly sustained by plaintiffs as a consequence of the delay before their property was excavated and remediated.
*512 The same limitations govern section 839 of the Restatement, which was not relied on by plaintiffs. Because the record is devoid of any allegation that Lowitz acted negligently, recklessly, or intentionally, section 839 does not provide a nuisance remedy in this case. Moreover, Lowitz took the “practicable” step available to her when she promptly contacted her insurers to advise them of the presence of the leaking oil tank on her property.[10]
Plaintiffs’ allegations present a sympathetic argument. But under well-settled law, they do not provide a basis for a claim for private nuisance under sections 822, 824, or 839 of the Restatement, or for trespass pursuant to sections 158, 161, or 165 of the Restatement, against the defendants. The trial court correctly granted summary judgment dismissing plaintiffs’ private nuisance and trespass claims.
C.
We next review the trial court’s grant of summary judgment dismissing plaintiffs’ third-party claims against State Farm and NJM, premised on an alleged breach of the covenant of good faith and fair dealing. That review requires us to determine whether plaintiffs should be considered third-party beneficiaries of the insurance contracts under which State Farm and NJM provided homeowners’ coverage to Lowitz.
As a general rule, an individual or entity that is “a stranger to an insurance policy has no right to recover the policy proceeds.” Gen. Accident Ins. Co. v. N.Y. Marine & Gen. Ins. Co., 320 N.J.Super. 546, 553-54, 727 A.2d 1050 (App.Div.1999) (citing Biasi v. Allstate Ins. Co., 104 N.J.Super. 155, 159-60, 249 A.2d 18 (App.Div.), certif. denied, 53 N.J. 511, 251 A.2d 450 (1969)). By virtue of an assignment of rights, a third party may assert a bad-faith claim against an insurer. Murray v. Allstate *513 Ins. Co., 209 N.J.Super. 163, 165, 168-71, 507 A.2d 247 (App.Div. 1986), appeal dismissed, 110 N.J. 293, 540 A.2d 1276 (1988); Biasi, supra, 104 N.J.Super. at 159-60, 249 A.2d 18. In the absence of such an assignment, plaintiffs assert that they are third-party beneficiaries to the insurance contracts executed by Lowitz and her insurers, State Farm and NJM, and that the insurers breached that duty by delaying the remediation of plaintiffs’ residence.
When a court determines the existence of “third-party beneficiary” status, the inquiry “focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement.” Broadway Maint. Corp. v. Rutgers, 90 N.J. 253, 259, 447 A.2d 906 (1982); see also Rieder Cmtys. v. Twp. of N. Brunswick, 227 N.J.Super. 214, 222, 546 A.2d 563 (App.Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988).
As the former Court of Errors and Appeals stated,
[t]he determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract. They are the persons who agree upon the promises, the covenants, the guarantees; they are the persons who create the rights and obligations which flow from the contract____Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention,
[Borough of Brooklawn v. Brooklawn Hous. Corp., 124 N.J.L. 73, 76-77, 11 A.2d 83 (E. & A.1940).]
If there is no intent to recognize the third party’s right to contract performance, “then the third person is only an incidental beneficiary, having no contractual standing.” Broadway Maint., supra, 90 N.J. at 259, 447 A.2d 906 (citing Standard Gas Power Corp. v. New England Cas. Co., 90 N.J.L. 570, 573-74, 101 A.281 (E. & A.1917)).
This Court has recognized an insurance company’s duty of good faith and fair dealing to its insured in the processing of insurance claims:
In the case of processing delay, bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or *514 recklessly disregarded the fact that no valid reasons supported the delay---[L]iability may be imposed for consequential economic losses that are fairly within the contemplation of the insurance company.
[Pickett v. Lloyd’s, 131 N.J. 457, 481, 621 A.2d 445 (1993).]
An insurer’s duty of good faith and fair dealing, however, has never been applied in New Jersey to recognize a bad-faith claim by an individual or entity that is not the insured or an assignee of the insured’s contract rights. As an Appellate Division panel has observed,
“[t]he right of the assured to recover against the insurer for its failure to exercise good faith in settling a claim within the limits of a liability policy ... is predicated upon the potential damage to the assured in being subjected to a judgment in excess of her policy limits and the consequent subjection of her assets to the satisfaction of such judgment. The damage is peculiarly to the assured by reason of a breach of an implied condition of the policy contract. The injured third party is a stranger in that sense. Moreover, public policy does not mandate that the injured party in the accident should be deemed the intended beneficiary of the company’s contractual duty to its policyholder to act in good faith regarding settlement.”
[Murray, supra, 209 N.J.Super. at 168-69, 507 A.2d 247 (quoting Biasi, supra, 104 N.J.Super. at 156-57, 249 A.2d 18).]
Accord Maertin v. Armstrong World Indus., 241 F.Supp.2d 434, 453-54 (D.N.J.2002) (holding that unless insured has assigned contract rights, third party may not proceed against insurer on bad faith claim).
We concur with the reasoning of those courts and apply the principle of their decisions to this case. It is a fundamental premise of contract law that a third party is deemed to be a beneficiary of a contract only if the contracting parties so intended when they entered into their agreement. See Broadway Maint., supra, 90 N.J. at 259, 447 A.2d 906; Brooklawn, supra, 124 N.J.L. at 76-77, 11 A.2d 83. Here, there is no suggestion in the record that the parties to the insurance contracts at issue had any intention to make plaintiffs, then the neighbors of the insured, a third-party beneficiary of their agreements. Nor does the migration of oil from Lowitz’s property to plaintiffs’ residence retroactively confer third-party beneficiary status on plaintiffs. The *515 insurers’ duty of good faith and fair dealing in this case extended to their insured, not to plaintiffs.
There is, in short, no basis for plaintiffs’ bad-faith claims against State Farm and NJM, as insurers of Lowitz in this case. The trial court properly granted summary judgment dismissing those claims.
IV.
The judgment of the Appellate Division is affirmed.
For affirmance — Chief Justice RABNER and Justices PATTERSON, SOLOMON and Judge CUFF (temporarily assigned) — 4.
For concurrence in part; dissent in part — Justices LaVECCHIA, ALBIN and FERNANDEZ-VINA — 3.

 In 2007, plaintiffs John Ross and Pamela Ross were married, and both lived on the property at issue following their marriage. According to plaintiffs’ complaint and other documents in the record, plaintiff John Ross remained the sole owner of 72 Leighton Avenue after plaintiffs’ marriage.

 Plaintiffs also named as defendants Haley and High Point, but their claims against those defendants were dismissed and are not the subject of this appeal.

 The consent order required the insurers to restore the property to its former condition following remediation, pay plaintiffs approximately $2000 per month for alternative living arrangements during portions of the remediation involving excavation, and pay plaintiffs approximately $21,000 in lieu of restoration of their pool, deck and retaining wall.

 For reasons that are not disclosed in the record, plaintiffs abandoned their Spill Act and strict liability claims after the remediation of their property was completed and the DEP issued its No Further Action Letter.

 Although plaintiffs do not specify in their complaint that the nuisance they allege is a private nuisance rather than a public nuisance, it is clearly the former. See In re Lead Paint Litigation, 191 N.J. 405, 424- 25, 426 n. 7, 924 A.2d 484 (2007) (noting distinction between private nuisance and public nuisance); see also Malhame v. Borough of Demarest, 162 N.J.Super. 248, 259-60, 392 A.2d 652 (Law Div.1978), appeal dismissed, 174 N.J.Super. 28, 415 A.2d 358 (App.Div. 1980).

 The Spill Act imposes strict, joint and several liability upon dischargers. See N.J.S.A. 58:10-23.llg(c)(l) ("[A]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred.”); see also Morristown Assocs. v. Grant Oil Co., 220 N.J. 360, 377-79, 106 A.3d 1176 (2015) (discussing Spill Act claims). The Spill Act claim that plaintiffs pled, but declined to pursue on appeal, did not preclude their common law nuisance and trespass claims. See N.J.S.A. 58:10-23.11v; State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 493, 468 A.2d 150 (1983).

 These standards are unaltered by the Restatement (Third) of Torts. See Restatement (Third) of Torts, parallel table 2 (2005).

 Smith, supra, 421 N.J.Super. at 379, 389-90, 24 A.3d 300, does not support the proposition that a nuisance claim can be maintained in the absence of evidence of fault. There, although the jury declined to find that the plaintiffs' damage — stray voltage passing through the ground on their residential property — resulted from the defendant utility’s negligence, it suggested that a utility's continued conduct in causing the stray voltage to be present on the plaintiffs’ property constituted an intentional act. Id. at 379, 389, 24 A.3d 300. This case does not raise the issue addressed by the Appellate Division in Smith, and we do not consider that issue.

 The Restatement (Third) of Torts did not alter this standard. See Restatement (Third) of Torts, supra, parallel table 2.

 Notwithstanding State Farms’ argument regarding the significance of the DEP’s "No Further Action Letter,” we do not rely on the determination of the DEP in our analysis of plaintiffs' nuisance and trespass claims.