**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2345-21
     A-2365-21

RAFAEL C. RIVERA, administrator
ad prosequendum of the estate of
LUIS C. RIVERA and the
administrator of the estate of
LUIS C. RIVERA,

  Plaintiff-Appellant,

v.

STARSTONE SPECIALTY
INSURANCE COMPANY,

  Defendant-Respondent,

and

WILSHIRE INSURANCE
COMPANY,

  Defendant,

and

172 FIRST LLC, d/b/a
O'HARA'S DOWNTOWN,

  Defendant-Appellant.

————————————————

RAFAEL C. RIVERA, administrator
ad prosequendum of the estate of
LUIS C. RIVERA and the
administrator of the estate of
LUIS C. RIVERA,

       Plaintiff-Respondent,

v.

STARSTONE SPECIALTY
INSURANCE COMPANY,

       Defendant-Respondent,

and

WILSHIRE INSURANCE
COMPANY,

       Defendant,

and

172 FIRST LLC, d/b/a
O'HARA'S DOWNTOWN,

       Defendant-Appellant.

————————————————

Argued February 6, 2024 – Decided April 1, 2024

Before Judges Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-1836-21.

John J. Scura III argued the cause for appellant Rafael C. Rivera (Scura Wigfield Heyer, Stevens & Cammarota, LLP, attorneys; Guillermo J. Gonzalez, of counsel and on the briefs).

Jennifer Borek argued the cause for appellant 172 First, LLC (Genova Burns, LLC, attorneys; Jennifer Borek and Nicholas Joseph Pellegrino, of counsel and on the briefs).

Don R. Sampen (Clausen Miller, PC) of the Illinois bar, admitted pro hac vice, argued the cause for respondents Starstone Specialty Insurance Company (Clausen Miller, PC, attorneys; Thomas D. Jacobson and Don R. Sampen, on the brief).

PER CURIAM

Plaintiff and defendant 172 First LLC (172 First, or 172), doing business as O'Hara's Downtown, each appeal the trial court's order granting defendant's motion for summary judgment. Plaintiff and 172 First sought a declaration that 172's excess liability insurance, purchased from defendant Starstone Specialty Insurance Company, was triggered once 172's primary policy sublimit was exhausted. In granting summary judgment to Starstone, the trial court rejected the relief sought by plaintiff and 172. For the following reasons, we affirm.

I.

Luis C. Rivera died after an altercation outside of O'Hara's Downtown. Plaintiff Rafael C. Rivera, Luis' father, was appointed Administrator Ad

Prosequendum and Administrator of the Estate of his son. Plaintiff sued 172 First alleging, among other theories, they negligently failed to provide adequate security.

172 First carried two liability insurance policies: a primary general commercial liability policy purchased from defendant Wilshire Insurance Company (Wilshire), and an excess umbrella policy purchased from Starstone Specialty Insurance Company (Starstone). The Wilshire policy provides liability coverage of up to $1,000,000 per occurrence, however it included an endorsement that stepped down coverage to $50,000 per occurrence for assault and battery claims. The Starstone umbrella policy provided for $1,000,000 of coverage in excess of the Wilshire coverage limit.

We highlight the relevant sections of the Starstone policy. "Section I – Coverages" includes subsection A., labeled "insuring agreement." It states:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as "damages" because of the "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies.

Section V of the Starstone policy is labeled "definitions." There are three relevant definitions.

A-2345-21

The term "applicable underlying limit of insurance" is defined as "the amount of insurance stated in the policies of 'underlying insurance' in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of 'claims' covered hereunder."

"Underlying insurance" is defined as "the policies listed in the Schedule of Underlying Insurance, including any renewal or replacement of such policies . . . ."

"Ultimate new loss" is defined as "the amount actually paid or payable due to a 'claim' for which the insured is liable either by a settlement to which we agreed or a final judgment."

Plaintiff sued, seeking a declaratory judgment compelling Starstone to provide liability coverage upon exhaustion of the $50,000 assault and battery coverage sublimit. Defendants 172 First and Wilshire answered and cross-claimed against Starstone, seeking a declaration from the trial court that Starstone's umbrella coverage drops down to the $50,000 Wilshire sublimit, the same relief sought by plaintiff. Starstone answered and moved for summary judgment. Plaintiff, 172 First, and Wilshire each opposed and cross-moved for summary judgment.

A-2345-21

The trial court granted Starstone's motion for summary judgment and it denied the cross-motions of plaintiff and co-defendants 172 First and Wilshire. The court found plaintiff had no standing to seek a declaratory judgment against Starstone, and, finding the Starstone umbrella policy terms unambiguous, concluded that the policy triggered upon exhaustion of Wilshire's $1,000,000 coverage limit, not its $50,000 assault and battery sublimit. The trial court made no finding as to 172 First's standing, and co-defendant Starstone did not raise the issue below. Plaintiff and 172 First appealed, and we granted plaintiff's motion to consolidate. On appeal, plaintiff and 172 First argue they have standing, and that the Starstone's excess coverage should be triggered by the exhaustion of the Wilshire $50,000 assault and battery sublimit.

## II.

### A.

We review summary judgment orders de novo. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting Davis v. Devereux Found., 209 N.J. 269, 286 (2012)). We apply "the same standard as the motion judge." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). A trial court grants summary judgment to the moving party "if the pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

### B.

The Declaratory Judgment Act's purpose is to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." The Legislature has stated that the Act "shall be liberally construed and administered." N.J.S.A. 2A:16-51. The Act empowers courts to "declare rights, status, and other legal relations, whether or not further relief is or could be claimed." N.J.S.A. 2A:16-52. In declaratory actions, "all persons having or claiming any interest which would be affected by the declaration shall be made parties to the proceeding." N.J.S.A. 2A:16-56. "No declaratory judgment shall prejudice the rights of persons not parties to the proceeding." N.J.S.A. 2A:16-57.

### C.

"In order to demonstrate standing, a plaintiff must have a 'sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and there must be a substantial likelihood that the plaintiff will suffer harm in the event of an unfavorable decision.'" Garden State Equality v. Dow,

434 N.J. Super. 163, 197 (App. Div. 2013) (quoting New Jersey Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409–10 (App. Div. 1997)). In the context of insurance disputes, an injured person generally possesses no direct cause of action against the insurer of the tortfeasor prior to recovery of judgment. President v. Jenkins, 357 N.J. Super. 288, 312 (App. Div. 2003) (citing Cruz-Mendez v. ISU/Ins. Servs., 156 N.J. 556, 566-67 (1999)). "In general, 'a stranger to an insurance policy has no right to recover the policy proceeds.'" Crystal Point Condo. Ass'n, Inc. v. Kinsale Ins. Co., 251 N.J. 437, 448, 277 (2022) (quoting Ross v. Lowitz, 222 N.J. 494, 512 (2015)).

## III.

### A.

We first address standing. Plaintiff contends it has standing to seek a declaratory judgment against Starstone because it has a clear interest in resolving a coverage dispute. Alternatively, plaintiff argues it has standing as a third-party beneficiary to the Starstone policy. 172 First argues it retains standing in its crossclaim against Starstone as a party to the insurance policy. Starstone, for the first time on appeal, challenges 172 First's standing to seek declaratory relief.

Plaintiff asks us to create an exception to the general rule barring an injured party from bringing a direct action against the insurer of the tortfeasor prior to recovery of judgment. We decline to do so. Plaintiff has not shown "a sufficient stake" in the litigation such that there is a "substantial likelihood" they will "suffer harm" in the event of an unfavorable decision. Garden State Equality, 434 N.J. Super. at 197 (quoting New Jersey Citizen Action, 296 N.J. Super. at 409–10). To the extent plaintiff argues it is "impossible to resolve this matter prior to trial" without the action sought, we are not persuaded. Plaintiff has not established that the determination of third-party excess coverage sought is necessary to litigate their claim. Plaintiff's purpose in this litigation is to identify one potential source of payment in the event plaintiff is successful in its liability claim against 172 First. The amount of coverage available to a particular defendant is not central to the apportionment of liability among co-defendants.

In the alternative, plaintiff contends it has standing because it is a third-party beneficiary of the Starstone policy. When we assess third party beneficiary status, our inquiry "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement."

Ross, 222 N.J. at 513 (quoting Broadway Maint. Corp. v. Rutgers, 90 N.J. 253, 259 (1982)). "It is a fundamental premise of contract law that a third party is deemed to be a beneficiary of a contract only if the contracting parties so intended when they entered into their agreement." Id. at 514. "If there is no intent to recognize the third party's right to contract performance, 'then the third person is only an incidental beneficiary, having no contractual standing.'" Id. at 513 (quoting Broadway Maint., 90 N.J. at 259).

Here, plaintiff has not met its burden to show it is a third-party beneficiary of the Starstone policy. Plaintiff fails to point to any evidence that Starstone or 172 First intended for plaintiff to derive any benefit from the policy at the time of its purchase. Plaintiff instead relies on the general premise that liability insurance permits aggrieved parties a financial recovery under certain circumstances. As such, plaintiff is merely an "incidental beneficiary" and does not have standing as a third-party beneficiary.

We next consider whether 172 First has standing to seek declaratory relief. Starstone argues that 172 First's answer and crossclaim fail to comply with the requirements for pleadings under R. 4:5-2, because the answer fails to include a statement of facts or a demand for judgment for relief. Because the answer and

crossclaim are defective, they argue, the crossclaim must fail. We are not persuaded.

It is well established that an insured may bring a declaratory action to resolve coverage disputes with their insurer. See Morrison v. American Intern. Ins. Co. of America, 381 N.J. Super. 532, 539 (App. Div. 2005) (considering a declaratory action brought by plaintiff to compel coverage). Indeed, "[n]o more fertile ground exists for the use of the declaratory judgment procedure than in the field of insurance, and the cases in which it has been employed throughout the country are legion." Condenser Service & Engineering Co. v. American Mut. Liability Ins. Co., 45 N.J. Super. 31, 38 (1957).

As a preliminary matter, Starstone did not object to 172 First's crossclaim before the trial court. As such, we may only consider Starstone's argument if it involves the jurisdiction of the trial court, concerns matters of great public interest, Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973), or it constitutes plain error, Rule 2:10-2. Plain error is an error or omission "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

We conclude there is no plain error, as Starstone had sufficient notice of the facts and the relief sought. The crossclaim alleges "the Starstone umbrella

policy is ambiguous and must provide drop down indemnity coverage to the $50,000.00 limits of Wilshire assault and/or battery coverage." The pleadings are sufficient for Starstone to be on notice that 172 First seeks the same declaratory relief as plaintiff. It follows that 172 is not precluded from bringing a crossclaim for declaratory relief against Starstone.

B.

We now consider the language of the Starstone policy. 172 First argues the coverage terms of the Starstone umbrella policy are ambiguous and should be construed in favor of providing coverage. 172 First also contends the Declarations in the Wilshire policy refer to the limited assault and/or battery endorsement, and this reference should be interpreted as an "applicable underlying limit."

It is well settled that insurance policies are contracts of adhesion and are therefore scrutinized with particularity. Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594-95 (2001). Where there is any ambiguity in the terms and conditions of the contract, "ambiguous language will be construed liberally and resolved against the insurer and in favor of coverage." Pinto v. New Jersey Mfrs. Ins. Co., 365 N.J. Super. 378, 387 (App. Div. 2004). That said, it is equally well settled that notwithstanding the unequal bargaining power between an insurance

company and an insured, "[i]f the policy language is clear, the policy should be interpreted as written." Nav-Its, Inc. v. Selective Ins. Co., 183 N.J. 110, 118 (2005) (citing President, 180 N.J. at 562). Where there is no ambiguity, the court should not rewrite the policy "to make a better policy of insurance than the one purchased." Gibson v. Callaghan, 158 N.J. 662, 670 (1999) (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990)).

Here, Starstone's policy provides that it will pay the net loss "in excess of the 'applicable underlying limit' which the insured becomes legally obligated to pay." The term "applicable underlying limit" is central to our analysis, as it determines when the policy's coverage is triggered.

172 First posits that the reference to the assault and battery endorsement in Wilshire's Declarations page incorporates the $50,000 sublimit and qualifies it as an "applicable underlying limit." We do not agree. The assault and battery endorsement on the Declarations page is cited in the "classification and premium" section, not the "limits of insurance" section. The reference is to the premium cost of the assault and battery endorsement, not the specified coverage limit of the endorsement. Because the definition of "applicable underlying limit" specifically refers to the "amount of insurance," not the "cost of insurance," this argument falls flat.

13

It is undisputed that the Wilshire policy is a policy of "underlying insurance" and that its "Declarations" page controls. It follows that the "applicable underlying limit" is the amount of insurance coverage stated in the Declarations page. Here, the Wilshire Declarations page specifies a general aggregate limit of $2,000,000 and a personal and advertising injury limit of $1,000,000 per occurrence. The Declarations page contains no reference whatsoever to the $50,000 assault and battery sublimit. As such, $1,000,000 per occurrence is the clearly specified "applicable underlying limit." The Starstone policy clearly and plainly identifies the dollar threshold which triggers its coverage. We discern no ambiguity, and therefore we decline to "rewrite the policy." Gibson, 158 N.J. at 670.

To the extent we have not addressed any remaining arguments of plaintiff, we conclude they are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2345-21