**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2212-23

DONALD J. UNGER,

    Plaintiff-Appellant,

v.

EDWARD DWYER and
SONALI DWYER,

    Defendants-Respondents.

_____

Argued March 25, 2025 – Decided April 28, 2025

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000248-21.

Alexander S. Firsichbaum argued the cause for appellant (Orloff, Lowenbach, Stifelman & Siegel, PA, attorneys; Xiaochen Sun, of counsel and on the briefs; Alexander S. Firsichbaum, on the briefs).

Timothy P. Smith argued the cause for respondents (Kinney Lisovicz Reilly & Wolff PC, attorneys; Timothy P. Smith, of counsel and on the brief).

PER CURIAM

Plaintiff Donald Unger appeals from an April 19, 2023 order granting summary judgment in favor of defendants Edward and Sonali Dwyer. We affirm in part and vacate and remand in part.

I.

This case arises from a dispute between neighbors who own adjacent residential properties in the Borough of Roseland (the Borough). Plaintiffs own a corner property at 2 Canoe Lane. Defendants own the property at 10 Ford Lane. The defendants' driveway runs along the line separating the parties' properties.

In 2008, plaintiff complained to the Borough of stormwater moving from 10 Ford Lane onto his property. The Borough identified the runoff issue and informed then-owners of 10 Ford Lane – Robert and Caroline Burke – of the complaint. In October 2009, plaintiff sued the Burkes in Superior Court for property damage caused by the runoff. Plaintiff alleged that, after the Burkes made alterations to their property in 2002, stormwater began to run from their property onto his, damaging his basement and foliage. The parties agreed to arbitrate the dispute. An arbitrator issued an award finding that the Burkes had altered the elevation of their property and potentially disturbed the southeasterly

2

flow of water towards a brook behind the properties called the Canoe Brook. The arbitrator awarded plaintiff $28,764 to install four catch basins and connection piping to Canoe Brook and $27,225 in damages to the foliage.

After purchasing 10 Ford Lane in 2020, defendants repaved their driveway and added a Belgian block curb which bordered the driveway perimeter except for gaps at each rear corner. Prior to the addition of the Belgian block, there was a railroad tie planter box that ran along a part of the driveway. The repaving did not alter the footprint, grade, or slope of the driveway.

Plaintiff alleged that, prior to the Belgian block installation, surface water which accumulated on defendant's driveway flowed along the driveway and through their backyard until it reached Canoe Brook. Plaintiff further alleged that after the installation, the surface water was diverted through a gap in the curb at the northeast rear corner of the driveway. It then ran onto plaintiff's property, damaging his trees. He further contended that these were the first water drainage problems he had experienced on his property since he fixed the drainage as a result of the arbitrator's award.

Plaintiff also purchased, installed, and maintained a garden on his property near the curb abutting Ford Lane. At some point in 2021, a tree had fallen from a neighboring property onto defendants' backyard and plaintiff's side

3

yard. After removing the branches from the tree, defendants moved them to the front of the property. The Borough removed most of the branches the next day, but plaintiff prevented Borough public works staff from removing branches that he claimed were on his property. Those branches were removed by the Borough the following week. Plaintiff claimed that these branches were placed on his property and killed some of his plants. Plaintiff testified at deposition that defendant Edward Dwyer had admitted that he had placed the branches in that area.

In December 2021, plaintiff filed a complaint, averring defendants: (1) created a nuisance by directing rainwater from their property onto plaintiff's property; (2) built a driveway that encroached onto plaintiff's property (trespass); and (3) trespassed on plaintiff's property to dispose of tree branches and damaged his plants. Defendants answered, raising affirmative defenses and counterclaims. Defendants then amended their answer to assert affirmative defenses of lack of proximate cause, res judicata, collateral estoppel, and plaintiff's failure to apportion damages.

During discovery plaintiff retained three experts: Bruce Blair, a licensed professional surveyor, who conducted a survey of the property and determined the path of surface water flow between the properties; Antoine Hajjar, a

4

professional engineer and licensed professional planner, who calculated the amount of stormwater runoff from defendants' property into plaintiff's property; and arborist Matt Weibel who calculated damages to the trees. All three experts provided reports. At his deposition Hajjar testified that he estimated that the percentage of runoff that flows out of the rear northeast corner of defendants' driveway relative to the rear southeast corner was between eighty-five and ninety percent. He also estimated that, before defendants installed the Belgian block, sixty to seventy percent of runoff had flowed to defendants' backyard instead of onto plaintiff's property.

After discovery, defendants moved for summary judgment as to all three counts in plaintiff's complaint. After plaintiff admitted that he could not show that the driveway encroached on the plaintiff's property in any way, the court dismissed plaintiff's trespass claim relating to the encroachment of defendants' driveway.[1] The trial court then found that the Blair and Hajjar expert testimony reports were inadmissible "net opinions" and dismissed the nuisance claim because "there is nothing in the record that the court will be able to look at other than pure speculation on the part of these experts . . . ." Last, the trial court granted summary judgment against plaintiff's second trespass claim after

---

[1] Dismissal of the trespass count is not challenged by plaintiff on appeal.

A-2212-23

determining that plaintiff failed to provide sufficient evidence to support a finding that defendants ever placed branches on plaintiff's land.  Instead, the court found that the property plaintiff claimed as his own was, in fact, a municipal right-of-way.  Because the trial court granted summary judgment on all three counts, it declined to rule on the issues of collateral estoppel, res judicata, or the apportionment of damages.

This appeal follows.

II.

We review the trial court's grant or denial of a motion for summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  "To decide whether a genuine issue of material fact exists . . . [we] 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (second alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).  We do not defer to the

trial court's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

III.

A.

Plaintiff first argues the trial court erred in granting summary judgment on his claim for nuisance because he established a genuine issue of material fact, that defendants altered the natural discharge of surface water in a manner that unreasonably affected the flow of water from their property to his. He further argues that Hajjar's report was not essential to establish defendants' liability.

"A cause of action for private nuisance derives from the defendant's 'unreasonable interference with the use and enjoyment' of the plaintiff's property. When analyzing nuisance claims, 'our courts are guided by the principles set forth in the Restatement (Second) of Torts.'" Ross v. Lowitz, 222 N.J. 494, 505 (2015) (citations omitted).

In deciding Ross, the Supreme Court began its analysis of plaintiff's nuisance claim with the general rule set forth in section 822 of the Restatement:

A-2212-23

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

[Id. at 505-06 (quoting Restatement (Second) of Torts § 822 (Am. Law Inst. 1979)).]

As the Ross Court explained, "an 'intentional but reasonable' or 'entirely accidental' invasion does not trigger liability under a private nuisance theory." Id. at 506 (quoting Restatement (Second) of Torts § 822 cmt. a). Rather, a claim of private nuisance is predicated on the unreasonable interference with the use and enjoyment of another's land. Id. at 505; see also Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374, 389 (App. Div. 2011). Thus, "'an actor is [not] liable for accidental interferences with the use and enjoyment of land but only for such interferences as are intentional and unreasonable or result from negligent, reckless or abnormally dangerous conduct.'" Ross, 222 N.J. at 506-07 (quoting Restatement § 822 cmt. b to Restatement (Second) of Torts § 822 cmt. b); see also Birchwood Lakes Colony Club, Inc. v. Medford Lakes, 90 N.J. 582, 591-92 (1982).

Under this standard, the trial court must first determine whether defendants committed multiple surface water "invasions" onto plaintiff's property. Then the trial court must determine whether the initial, or only, invasion was intentional pursuant to section 825 of the <u>Restatement (Second) of Torts</u>.[2] If there was more than one invasion, and defendants were made aware of the initial invasion, then the trial court should assess the intentionality of subsequent, known invasions under section 825, comment d of the <u>Restatement (Second) of Torts</u>.

If the trial court finds that there was only a single invasion and that invasion was unintentional, then the court must determine whether the invasion was "negligent" or "reckless" under section 822, subsection b of the <u>Restatement (Second) of Torts</u>. If the trial court determines that any invasion was intentional, then the court must apply the factors set out in <u>Armstrong v. Francis Corp.</u>, 20 N.J. 320, 329-30 (1956) and section 826 of the <u>Restatement (Second) of Torts</u> to determine reasonableness under the "reasonable use" test. In doing so, the court should also balance the utility of defendants' conduct with the resulting

---

[2] "An invasion of another's interest in the use and enjoyment of land or an interference with the public right, is intentional if the actor (a) acts for the purpose of causing it, or (b) knows that it is resulting or is substantially certain to result from his conduct."

A-2212-23

harm to plaintiff.  Armstrong, 20 N.J. at 330; section 825 of the Restatement (Second) of Torts.

"[E]very motion for summary judgment requires the court, trial or appellate, to review the motion record against . . . the elements of the cause of action . . . ."  Bhagat v. Bhagat, 217 N.J. 22, 26-27 (2014).

The record shows that the trial court dismissed the nuisance claim after determining the expert report was a net opinion.  However, the court did not apply other facts in the record, derived from testimony adduced through discovery, to the applicable standards for a nuisance cause of action.  As such, we are constrained to vacate the summary judgment finding on this count and remand for the court to determine if, taking the remaining evidence and giving all inferences to plaintiff, he has met the elements to prove nuisance.  It necessarily follows that the trial court must also consider and make findings on the issues of collateral estoppel, res judicata, and the apportionment of damages based on the record before it.  On remand, we express no opinion as to the merits of plaintiff's nuisance claims.

B.

Plaintiff next argues that the trial court erred when it granted summary judgment on plaintiff's trespass claim for placing the branches by the curb.  He

10

contends there were genuine issues of material fact which precluded the court from finding defendants did not enter his property and dispose of the branches.

To establish a claim of trespass, plaintiff bore the burden to show that defendants engaged in an unauthorized entry onto his land. Pinkowski v. Twp. of Montclair, 299 N.J. Super. 557, 571 (App. Div. 1997). "[A] trespass on property, whether real or personal, is actionable, irrespective of any appreciable injury." Ibid. (alteration in original) (quoting Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 45 (1984)). "Under a trespass theory, a plaintiff may 'assert a claim for whatever damages the facts may lawfully warrant.'" Ibid. (quoting Szymczak v. LaFerrara, 280 N.J. Super. 223, 233 (App. Div. 1995)). Section 929 of the Restatement (Second) of Torts (1977) "sets out [] distinct categories of compensation with respect to invasions of an interest in land: . . . (b) the loss of use of the land, and (c) discomfort and annoyance to him as occupant." Ayers v. Jackson Twp., 106 N.J. 557, 571 (1987) (citation reformatted); see also Kornbleuth v. Westover, 241 N.J. 289, 302 (2020).

Plaintiff contends that two pieces of evidence raise genuine issues of material fact: (1) plaintiff's testimony that defendant Edward Dwyer admitted that he placed the branches on plaintiff's plants; and (2) defendant Edward

11

Dwyer's admission that he placed the branches in the area near the plants. We disagree.

The area where Edward Dwyer placed the branches for municipal disposal was shown in the photographs marked for identification. Those photographs show that the branches that Edward Dwyer set out for municipal disposal lie alongside the curb on Ford Lane. Blair, plaintiff's surveyor, also testified that the land was a municipal right of way and not plaintiff's property. Fatal to plaintiff's trespass claim is the fact that plaintiff testified at his deposition that Edward Dwyer allegedly admitted placing branches "in that area" where plaintiff claimed, incorrectly, that his property abuts Ford Lane. Because the photographs do not sufficiently support the conclusion that the debris was placed on the plaintiff's plants, there is not a genuine dispute of material fact that exists.

Edward Dwyer's deposition testimony also supports the court's findings that there was no evidence that he damaged plaintiff's plants. His deposition only reflects that he testified that he placed branches in the area near the plants. He specifically testified he did not place any branches on the plants.

Plaintiff argues in the alternative that his "trespass claim does not depend upon his ownership of the land on which his plants were located" because the plants were his "chattel property." Plaintiff does not cite any existing law that

12

permits him to bring a claim for the destruction of plants planted on property that was not his own. As such, the court was correct in granting summary judgment.

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

13